AMERICAN SURETY CO. OF NEW YORK
v. BETHLEHEM NAT. BANK OF
BETHLEHEM, PA., et al.

No. 514.

District Court, E. D. Pennsylvania.

March 6, 1940.

Frank P. Slattery, of Wilkes-Barre, Pa., and Rutledge Slattery, of Philadelphia, Pa., for plaintiff.

H. P. McFadden, of Bethlehem, Pa., for defendants.

KIRKPATRICK, District Judge.

This is a suit by the surety upon a bond, given by the now insolvent Bethlehem National Bank as security for the deposit of the Commonwealth of Pennsylvania, to recover dividends declared by the receiver. The right of the plaintiff to dividends is not disputed, but the amount is. The point at issue is the basis for the dividend, that is, the amount of the claim upon which it should be calculated and paid.

The case came before the Court upon a motion to dismiss, but, inasmuch as it appeared at the argument that no facts were in dispute, the parties filed a stipulation (which for all practical purposes amounts to an amendment of the complaint and an answer admitting all fact allegations) and agreed that the Court should dispose of the case as on a rule for judgment on the pleadings.

When the Bank closed, the Commonwealth's deposit amounted to $135,000. It was secured by the Bank's bond for $125,000 with the plaintiff as surety. As additional security the Bank had pledged bonds, of the par value of $12,000, with the Commonwealth.

Seven months after the Bank closed, the Commonwealth was paid $50,000 by the plaintiff on account of its liability as the Bank's surety.

Five months later a dividend of 40% was declared, and the Commonwealth received an additional $54,000 from the receiver.

A month after that, the Commonwealth sold the pledged securities for $12,411.44, and shortly thereafter the plaintiff paid the Commonwealth $18,588.56, or the balance of its deposit. In all the plaintiff paid the Commonwealth $68,588.56, not counting interest.

The plaintiff takes the position that it is entitled to dividends upon the basis of the full amount of its principal's deposit in the Bank ($135,000). The receiver contends that the dividend should be on a basis, not of the full amount of the deposit, but either (a) of the actual amount paid by the plaintiff to the Commonwealth in discharge of its suretyship liability ($68,588.56), or (b) of the amount of the deposit reduced by the amount of the Commonwealth's recovery from the pledged collateral ($12,411.44). Upon this latter theory, the basis of the dividend would be $122,588.66. The receiver has made tenders in accordance with both theories.

In stating the general principles which apply to this case it will be convenient to use the term "the creditor" when referring to the creditor secured by the surety bond (here the Commonwealth), and the term "general creditors" collectively for all other creditors entitled to share in dividends. The Bank is, of course, the debtor, and the plaintiff the surety.

The case before us is that of a surety asserting its right to dividends upon the whole claim of the creditor whom it secured, and to the benefit of the rule which would allow the creditor dividends on its claim without reduction by the realization from collateral. The creditor has received full payment of his claim. Part of it was paid by the debtor; part of it was realized from the debtor's collateral; and the surety has paid the balance. The debtor is insolvent.

It is highly important to have clearly in mind that the surety is claiming subrogation—that is, substitution in place of the creditor. It also has (but is not here asserting) a direct claim against the debtor, as a creditor in its own right, by virtue of the debtor's implied agreement to indemnify it for any payment which it might be required to make under the contract of suretyship. The distinction between the two kinds of claims is pointed out clearly in Mellette etc. Co. v. H. Poehler Co., D. C., 18 F.2d 430.

The doctrine of subrogation is a device adopted or invented by equity to provide that debts ultimately will be discharged by those who in good conscience ought to pay them. Conversely, it is an appropriate means of preventing unjust enrichment. If a surety is made to pay, it is only just that he should have full reimbursement, out of the assets of the principal debtor, so far as it can be given him without injustice to others. The rights and interests which must be balanced in determining what is a just distribution are those of the surety, the creditor whom he has secured, and the general creditors.

As long as the creditor remains unpaid in whole or in part it would be obviously unfair and unjust to him to permit

the surety to receive any part of the estate of an insolvent debtor. To do so would decrease the creditor's dividend by his proportionate share of the payments to the surety, and thus allow the surety to compete against him—in derogation of the purpose of his contract of suretyship.

However, when the creditor has received everything due him and his claim has been discharged, there is no further reason, so far as he is concerned, why the surety's right to reimbursement should be suspended. This is, of course, true whether the creditor has been paid in whole by the surety or whether part of his claim has been recovered from the debtor or the debtor's collateral. There may have been some confusion about this formerly, but there is no doubt at the present time that where the claim of the creditor has been satisfied, from whatever source, surety is entitled to subrogation.

The creditor, having been paid, and so eliminated as a factor in the problem, it remains to balance the surety's rights and the interests of the general creditors. It is not easy to arrive at any solution which is entirely satisfactory and leaves one free from doubt as to the justice of the result. On the one hand, if the surety be allowed dividends on the full amount of the creditor's claim, they will be based upon an amount in excess of what he has expended, whereas the general creditors will be sharing only on the basis of their actual advancements. If, on the other hand, the surety is limited to the amount which he has actually paid as the basis of his claim, then the general creditors get a windfall, for no other reason than that one of them has bought and paid for additional protection which none of the others chose to take —for, of course, if there had been no suretyship, the creditor would be proving and receiving dividends on the full amount of his claim.

On the whole, it seems to me that, if the real objective of the doctrine of subrogation be kept in mind, we come closer to distributing the loss fairly and avoiding unjust enrichment of any interest by allowing the surety to claim on the basis of the full amount of the creditor's claim. By so doing it may be possible to reimburse him fully, and still do entire justice to the general creditors—for it can hardly be called unjust or unfair to leave them exactly where they would have been had there been no suretyship, with their rights

neither impaired nor enlarged by an arrangement with which they had nothing to do and which was purely fortuitous so far as they are concerned. To hold otherwise would really be to deny the surety subrogation altogether. If he be limited to the actual amount that he has expended or has contributed toward the payment of the creditor's claim, then he might as well come in as a direct creditor by virtue of the debtor's obligation to indemnify him.

■ Of course, a subrogated surety who has paid less than the entire amount of the creditor's debt will never be allowed to recover more than he has actually advanced, but, until he is made whole I see no reason why he should not be clothed with all the creditor's rights and remedies as they stood at the time of the debtor's insolvency.

■■ This brings us to the question of the effect of the creditor's realization from the sale of the collateral. The creditor in this case had the right to prove and receive dividends upon its full claim, as it stood at the time of the debtor's insolvency, without crediting collections from collateral pledged to secure the debt. This was settled beyond dispute in Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640, as the rule for the ratable distribution of the assets of an insolvent national bank. If the subrogee is to be placed as far as justly possible in the precise position of the one to whose rights he is subrogated, then he should be entitled to assert those rights as they stood at the date of the insolvency, and the basis for his dividends, no more than that of the creditor, should not be cut down by the realization on collateral.

I am therefore of the opinion that the plaintiff is entitled to participation in the liquidation of the Bank on the basis of $135,000, or the full amount of the Commonwealth's claim, save that in no event can it receive more than it has actually paid the Commonwealth.

■ If the foregoing view of the plaintiff's rights is correct, there is no reason why interest should not be allowed. The dividend was declared and became payable immediately thereafter. It was never tendered to the plaintiff in full, nor was the partial tender in a form which the plaintiff could accept without waiving its rights to the balance.

Counsel fees are not allowable to the plaintiff.

The parties may submit an order for judgment in accordance with the foregoing opinion.

## NOTES.

 (1) I do not regard the Pennsylvania decisions as controlling. What is involved here is the distribution of the assets of an insolvent national bank. Under the Federal Banking Law, 12 U.S.C.A. § 194, distribution is to be "ratable," and it is for the Federal Court to determine what that means in each particular case. Of course, in so doing, considerations of underlying equitable principles as well as fairness and justice to all interests govern.

(2) The defendant relied principally upon two decisions of Circuit Courts of Appeals in other Circuits.

Ward v. First National Bank of Caruthersville, 8 Cir., 76 F.2d 256, was a case in which the surety (not the creditor) held collateral pledged by the debtor. It is perhaps distinguishable upon that and the further ground that what was really involved was the surety's rights as a direct creditor of the debtor upon the latter's contract to indemnify it (though the Court seems to have observed no distinction between this right and the equitable remedy of subrogation). At any rate, the practical effect of the decision was to deny the surety the right of subrogation.

Maryland Cas. Co. v. Cox, 6 Cir., 104 F. 2d 354, 358, is, at any rate so far as certain statements contained in the opinion are concerned, in conflict with the principles upon which I have reached my conclusion in the present case. The Court there said, referring to a surety who had paid part of the creditor's claim (the balance having been recovered from other sources and the creditor paid in full), "It is as though the appellant had purchased a part of the debt. It did not pay the whole debt and is not entitled to collect upon the whole debt * * *." I can only say that, as applied to a case in which the creditor had been made whole, I can find no other authority for this statement of the law. It limits the surety to his claim on the debtor's contract of indemnity and, although the creditor is no longer interested, denies the surety the remedy of subrogation. It seems quite clear that the decisions go to this length only where the creditor's debt has not been discharged. The Court in the Cox case also pointed out that there were other sureties on the same debt, and that to allow each of them to prove separately on the basis of the entire debt would be unfair and a duplication. No doubt it would be, but there should be no difficulty, under equitable rules, in pro-rating between sureties in a situation of that kind. In the present case the question does not arise, because the plaintiff is the only surety.

The question does not seem to have been dealt with in this Circuit. Piedmont Coal Co. v. Hustead, 3 Cir., 294 F. 247, 32 A.L. R. 556, would seem to indicate that the Court felt that a surety who has paid part of the claim is entitled to subrogation by way of substitution to the entire claim, even in a case where the creditor voluntarily remitted about 10% of the claim to the debtor, and so was not quite paid in full. However, I do not go so far as to say that I regard this case as dispositive of the present one, because it is not clear to what extent subrogation was allowed.

(3) It is a fact that the Commonwealth made an assignment of its entire claim to the plaintiff, but, inasmuch as I have fully sustained the plaintiff's position, upon the ground that it is entitled to be substituted for the Commonwealth by subrogation, it is unnecessary to consider whether, independently of that right, the plaintiff's position could have been sustained upon the assignment alone.