## AMERICAN SURETY CO. OF NEW YORK v. BETHLEHEM NAT. BANK OF BETHLEHEM, PA.

### No. 7518.

Circuit Court of Appeals, Third Circuit.

Nov. 27, 1940.

H. P. McFadden, of Bethlehem, Pa., for appellants.

Rutledge Slattery, of Phildelphia, Pa., and Frank P. Slattery, of Wilkes-Barre, Pa., for appellee.

Before CLARK, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

At the closing of the Bethlehem National Bank of Bethlehem, Pa., the Commonwealth of Pennsylvania had on deposit $135,000. It was secured by the bank's bond for $125,000 with the plaintiff as surety. As additional security the bank had pledged bonds with the Commonwealth, par value of which was $12,000. These bonds were sold for $12,411.44. The Commonwealth received the first dividend of 40% in the course of liquidation of the bank and the plaintiff paid the Commonwealth the balance. The total amount paid by the plaintiff, not counting interest, was $68,588.56.

The question before the court on this appeal is the basis upon which the plaintiff surety might prove and receive dividends. Plaintiff takes the position that it is entitled to dividends upon the full amount of its obligee's original bank claim which was $135,000. The court below, D.C., 33 F.Supp. 722, 724, after a carefully prepared and thoughtfully reasoned opinion, sustained the plaintiff's view. The receiver contends that plaintiff is entitled to participate in the liquidation of the bank to the extent of a claim of $68,588.56, the amount it actually paid to the Commonwealth. There is also the question of whether the plaintiff is entitled to interest upon further dividends which have been declared and paid to other creditors, but which the plaintiff has not received.

The difficulty with regard to the decision is clearly stated by the trial court in this language: "It is not easy to arrive at any solution which is entirely satisfactory and leaves one free from doubt as to the justice

of the result. On the one hand, if the surety be allowed dividends on the full amount of the creditor's claim, they will be based upon an amount in excess of what he has expended, whereas the general creditors will be sharing only on the basis of their actual advancements. If, on the other hand, the surety is limited to the amount which he has actually paid as the basis of his claim, then the general creditors get a windfall, for no other reason than that one of them has bought and paid for additional protection which none of the others chose to take—for, of course, if there had been no suretyship, the creditor would be proving and receiving dividends on the full amount of his claim."

Nobody disputes the general right of a surety who pays a principal debtor's obligation to reimbursement and indemnity from the debtor whether expressly provided by contract or not. Nor does either party to this litigation dispute the general doctrine by which a surety who pays a creditor is subrogated to the creditor's rights. Restatement, Restitution § 162. The question here is much narrower, for it has to do, not with the broad principles of subrogation, but with the rights of a surety who has paid a part of a claim against a national bank which is in liquidation. Both the lower court and the parties agree that the Pennsylvania decisions are not controlling because what is involved here is the distribution of assets of an insolvent national bank. Again to quote from the opinion below: "Under the Federal Banking Law, 12 U.S.C.A. § 194, distribution is to be 'rateable,' and it is for the Federal Court to determine what that means in each particular case. Of course, in so doing, considerations of underlying equitable principles as well as fairness and justice to all interests govern." 33 F.Supp. 722, 725.

One can make a formally logical argument in support of the surety's position. In Merrill v. National Bank of Jacksonville, 1899, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640, it was held by the Supreme Court, though not without very vigorous dissent, that the "equity rule" was the one to be applied as between a debtor and the creditors where a national bank was in liquidation. By that decision a creditor was permitted to prove in the liquidation proceedings for the full amount of his claim notwithstanding he was protected by collateral which covered a large part of it. That decision, of course, binds this court.[1] But that case did not concern a surety and, therefore, is not directly in point here. However, if a surety, upon paying the creditor, is entitled to step exactly into the creditor's shoes by the doctrine of subrogation, it is arguable that he has all the rights which the creditor had, including the right to prove for the full amount of the claim. As a possible makeweight it can be added that the surety in this case took an assignment from the creditor, after the surety had paid the sum due the creditor. This makeweight, however, has no added force since, at the time of the assignment, the claim had been discharged. We do not think that the assignment added anything to the rights which the surety already had. See Louisville Trust Co. v. Royal Indemnity Co., 1929, 230 Ky. 482, 20 S.W.2d 71.

■ The flaw in the argument is the major premise that subrogation involves a complete assimilation by the one subrogated of all of the creditor's rights. It is another illustration of the point that one can get out of a major premise all that he puts into it. Subrogation is not an inflexible legal concept nor a hard and fast rule like that of the common law which required words of inheritance to create an estate in fee simple. It is simply an exercise of the equitable powers of a court and is allowed "only when it does not conflict with the legal or equitable rights of other creditors of the common debtor; and the principle is one of equity merely, and will be carried out in the exercise of a proper equitable discretion, with a due regard to the legal and equitable rights of others." Sheldon on Subrogation (2d Ed. p. 5). For instance a surety company has recently been held not to be entitled to subrogation to the Commonwealth's preference over other depositors. In re South Philadelphia State Bank's Insolvency, 1929, 295 Pa. 433, 145 A. 520, 83 A.L.R. 1123. Comment (a) of § 138 of the Restatement of Security, Tent. Dr. No. 4, states that "Subrogation is based on general principles of justice and does not spring from contract although it may be confirmed or qualified by contract. It is a mode which equity adopts to compel the discharge of a debt by the one who in good conscience ought to pay it. * * *

---

[1] But an interesting paper by Mr. Ralph E. Clark in 15 Ill.L.Rev. 171, 180, suggests that a serious question is presented whether the Supreme Court would continue to support the "chancery" rule.

Subrogation, as a creation of equity is subject to the limitation that it will not be allowed where it will prejudice the creditor or be inequitable to third persons." [2]

■ What, then, is the equitable rule to apply to this surety company to secure the "rateable distribution" required by the statute? We are not faced here with the problem of the choice between the "equity rule" and the "bankruptcy rule" involving the rights to participation by secured creditors. [3] We should not be free to choose in that situation unless the Merrill case, which followed the equity rule, has been abandoned.

But the claimant here is not the secured creditor but his surety. [4] Considerations which tend to support the view that the secured creditor should not lose the benefit of his diligence in obtaining security, when it comes to proving his claim against the estate of an insolvent are inapplicable here. The risk that the debtor bank might become insolvent was the very thing which the surety company insured against and presumably was paid for so doing. That was the same risk which was taken by the unsecured depositors in the bank who, along with the surety, now seek an apportioned share of the bank's assets. There is only so much money to go around; the more one gets the less someone else will receive. The surety and the depositors shared the same risk. It seems fair that they should share, in partial compensation for their loss, on the same basis. The basis on which the depositors share is the proportion of their actual loss, the amount of their deposits. The surety's actual loss is the same that it paid out, which was $68,588.56. This, we think, is the basis on which it is entitled to claim. The plaintiff argues that such a rule penalizes the surety for prompt performance of his obligation. We think the

contrary is true. If the surety wants to prove for the full amount it can do so by paying promptly the amount of the obligation for which it stands as surety. The amount received by the Commonwealth prior to payment by the surety did not hurt the surety because it reduced, by that much, what the surety had to pay.

The result reached is in accordance with the decisions of Circuit Courts of Appeals in the Eighth and Sixth Circuits with the Sixth Circuit case directly in point. Ward v. First National Bank, etc., 8 Cir., 1935, 76 F.2d 256; Maryland Casualty Co. v. Cox, 6 Cir., 1939, 104 F.2d 354.

■ The second point in the case raises the question whether the surety company is entitled to interest on the dividends payable to and received by the other creditors, but not by the surety. This applies to the second, third and fourth dividends. The receiver argues that the surety is not entitled to interest, at least on the second and third dividends, because plaintiff refused to take dividend offers made to it. The surety says that it was asked to sign a receipt admitting that the amount paid be accepted as a dividend upon the full claim of the plaintiff, which the receiver endeavors to explain by saying it "was no more than a general practice employed by the defendant bank" and admits that no actual tender of the dividends was made. The plaintiff company was entitled to dividends and the receiver of course does not dispute that fact. We think it clear that under these circumstances the surety's claim for interest was well founded and that the interest on its dividends should be allowed from the time such dividends were declared.

The judgment of the District Court is reversed and the cause remanded for further proceedings.

---

[2] The right of the surety to subrogation is stated to exist to the extent that he has contributed to the satisfaction of the creditor; Restatement, Security, Tent. Dr. No. 4, § 138.

[3] For discussion of the merits of the two rules see Note in 8 Minn.L.Rev. 232; Fred T. Hanson, A Secured Creditor's Share of an Insolvent Estate, 34 Mich.L.

Rev. 309; Clark article cited in footnote 1.

[4] Present day decisions abound with statements to the effect that the commercial surety, unlike the personal and often gratuitous surety, is not the special favorite of the law. See Sokoloff v. Fidelity & Casualty Co., 1927, 288 Pa. 211, 215, 135 A. 746; Annotations in 12 A. L.R. 382; 94 A.L.R. 876.