## AMERICAN SURETY COMPANY OF NEW YORK
### v. BETHLEHEM NATIONAL BANK ET AL.

No. 29. Argued November 12, 1941.—Decided December 8, 1941.

*Mr. Rutledge Slattery,* with whom *Messrs. George P. Williams, Jr.* and *Frank P. Slattery* were on the brief, for petitioner.

*Mr. George P. Barse,* with whom *Messrs. H. P. McFadden* and *Lee Roy Stover* and *Miss Harriet Buckingham* were on the brief, for respondents.

*Mr. W. Page Dame, Jr.* filed a brief on behalf of the U. S. Fidelity & Guaranty Co., as *amicus curiae,* urging reversal.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The facts of this case are simple. The Commonwealth of Pennsylvania had $135,000 on deposit in the Bethlehem National Bank. This deposit was secured by a $125,000 bond, upon which the plaintiff was surety, and by a pledge

of government bonds having a par value of $12,000. The bank became insolvent, and a receiver was appointed. Thereafter, the Commonwealth obtained, in round figures, $12,500 from the sale of the collateral and $54,000 as a 40% dividend on its claim, a total of $66,500. The remaining $68,500 was paid by the surety, thereby fully satisfying the Commonwealth's claim. The present suit arose out of three further dividends, of 20%, 10%, and 5%, respectively, declared by the receiver. The surety sought dividend payments on the basis of the original indebtedness, that is, $135,000. The receiver insisted that the extent of the surety's participation must be measured by the sum actually expended to discharge its principal's obligation, to wit, $68,500. Reversing the decision of the District Court, 33 F. Supp. 722, the Circuit Court of Appeals for the Third Circuit upheld the receiver's contention. 116 F. 2d 75. In view of conflicting expressions by the lower courts upon a question so important in the liquidation of national banks, cf. *Maryland Casualty Co.* v. *Cox*, 104 F. 2d 354; *Ward* v. *First National Bank*, 76 F. 2d 256; *Fouts* v. *Maryland Casualty Co.*, 30 F. 2d 357, we brought the case here. 312 U. S. 677.

The National Bank Act provides for the "ratable" distribution of assets of insolvent national banks. R. S. § 5236; 12 U. S. C. § 194. The question for decision is therefore one of federal law. *Deitrick* v. *Greaney*, 309 U. S. 190, 200–01; *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131; *Davis* v. *Elmira Savings Bank*, 161 U. S. 275; *Cook County Nat. Bank* v. *United States*, 107 U. S. 445, 448. Congress has seen fit not to anticipate by specific rules solution of problems that inevitably arise in national bank liquidations. Instead, it chose achievement of a "just and equal distribution" of an insolvent bank's assets through the operation of familiar equitable doctrines evolved by the courts. *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 284; *Jenkins* v. *National Surety Co.*,

277 U. S. 258, 267. Among the oldest of these doctrines is the rule of subrogation whereby "one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other." Sheldon, Subrogation (2d ed.) § 11; see *Hampton* v. *Phipps,* 108 U. S. 260, 263; *Hodgson* v. *Shaw,* 3 Myl. & K. 183, 191; *Hayes* v. *Ward,* 4 Johns. Ch. 123, 130.

Here the surety was compelled to pay to the Commonwealth $68,500 which ought to have been paid by the bank. Of course, it succeeds to the Commonwealth's right to receive payment of $68,500 from the bank—and in no event can the surety receive more. But as a means of enforcing this right the Commonwealth was entitled to share in all future dividends on the basis of its original claim of $135,000. *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131. Succeeding to the creditor's right, the surety also succeeds to the creditor's means for enforcing it. The surety is a special kind of secured creditor. For its claim against the principal is secured by its right of subrogation to the remedies of the creditor which it has been compelled to pay. Of course, this right can be availed of only by a surety alert in discharging its duty, *Jenkins* v. *National Surety Co.,* 277 U. S. 258, 267, and one not guilty of inequitable conduct, *United States* v. *Ryder,* 110 U. S. 729, 737. In other respects, a right of subrogation is as much in the nature of a security as is a mortgage.

A "ratable" distribution requires that dividends be declared proportionately upon the amount of all claims as they stand on the date of the insolvency. This is settled law. *White* v. *Knox,* 111 U. S. 784, 787; *Merrill* v. *National Bank of Jacksonville, supra,* at 143; *Ticonic Bank* v. *Sprague,* 303 U. S. 406, 411. "The distribution is to be 'ratable' on the claims as proved or adjudicated, that is,

on one rule of proportion applicable to all alike. In order to be 'ratable' the claims must manifestly be estimated as of the same point of time, and that date has been adjudged to be the date of the declaration of insolvency." *Merrill* v. *National Bank of Jacksonville, supra,* at 143. The basis of participation in the bank's assets by the Commonwealth was $135,000, the amount of the claim on the date of insolvency. The amount of the claim having been thus fixed on the date of insolvency, it did not shrink because of the extraneous circumstance of the creditor's forethought in securing partial satisfaction of its loss by going against the collateral and the surety.

To permit the surety to stand in the shoes of the secured creditor whose claim it has paid does not prejudice the rights of the general creditors. The extent of their participation in the distribution of the Bank's assets was fixed on the day it became insolvent. The surety will receive no greater share than would have been received by the Commonwealth had it not been for the circumstance that its claim was secured by a surety's bond. If, for one reason or another, the surety had withheld payment to the Commonwealth, the latter would have continued to receive dividends on the full amount of its claim, or if, on a nice calculation, the surety had at the outset satisfied its principal's obligation, it would have been entitled to share on the basis of the full amount. On the other hand, if the surety's participation should be limited to the extent now urged by the receiver, the other creditors would profit solely because of fortuitous circumstances and without any relation to reasons of intrinsic fairness. The extent of the participation of the surety, and therefore that of the other creditors, would depend on how, when, and against whom the secured creditor presses its claim. Cf. *In re Thompson,* 300 F. 215, 217–18; *Pace* v. *Pace,* 95 Va. 792, 799, 30 S. E. 361. Such a result leaves too much to

caprice or accident and is wholly at variance with the guiding criterion of "ratable" distribution.[1]

A final consideration needs mention. The receiver cites several instances in which the Comptroller of the Currency has stated that the basis of a surety's claim is to be measured by the amounts it has expended. But there is wanting here any long-continued practice which establishes its own law within the permissible area of administrative action. Cf. *Inland Waterways Corp.* v. *Young*, 309 U. S. 517, 524–25.

*Reversed.*

MR. JUSTICE DOUGLAS, dissenting:

The only virtue possessed by *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131, is the fact that it has been on the books for over forty years. It held that a secured creditor could receive dividends on the face amount of his claim even though that claim had been reduced by the value of the collateral between the date of insolvency and the date of distribution. That rule of distribution is inequitable and unfair to the run of depositors. It gives an advantage to the secured creditor unwarranted

---

[1] Reflecting the special policy of bankruptcy legislation favoring the general creditor against the secured creditor, the rule prevails in bankruptcy that dividends upon the claims of secured creditors "shall be paid only on the unpaid balance." § 57 (h), 30 Stat. 544, 560, 11 U. S. C. § 93 (h); 14 Stat. 517, 526. It is settled, however, that the "bankruptcy" rule is inapplicable to the distribution of assets of insolvent national banks. *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131. There is no occasion to reëxamine the correctness of that decision, the authority of which has never been questioned here and was again recognized very recently. *Ticonic Bank* v. *Sprague*, 303 U. S. 406, 412. Although the National Bank Act has been amended many times since its original enactment in 1864, 13 Stat. 114, the provision governing distribution of dividends has remained substantially intact. The construction given the provision in the *Merrill* case has been left unchanged by Congress.

by any provision of his contract. For it treats the claim as wholly unpaid even though it has been partially discharged by liquidation of the collateral. The impact on other creditors is oppressive. Under the rule of the *Merrill* case, a depositor with a $10,000 claim, secured by $5,000 worth of collateral, will be wholly paid if the insolvent bank pays a 50% dividend. On the other hand, an unsecured depositor with a $10,000 claim salvages under those circumstances only $5,000. A rule of distribution which sanctions such a discriminatory result violates the requirement for "ratable" dividends prescribed by the National Banking Act. R. S. § 5236, 12 U. S. C. § 194. This is no occasion, however, to elaborate on the point. It was fully covered in its historical and legal aspects by the dissenting opinions of Mr. Justice White and Mr. Justice Gray in the *Merrill* case.

The majority of the Court was of the view that whatever might be the power of Congress under the bankruptcy clause of the Constitution, the adoption of the bankruptcy rule [1] in equity would be an invasion of "prior" contract rights (173 U. S. at p. 146)—an impairment of obligation

---

[1] It should be noticed that the bankruptcy rule, now codified (Bankruptcy Act § 57 (h), 11 U. S. C. § 93 (h)), which allows the secured creditor to receive dividends only on the balance remaining after the value of the security has been deducted from the claim, did not derive from a special statutory provision. As pointed out by Mr. Justice Gray in his dissent in the *Merrill* case (173 U. S. at pp. 174–175) the Bankruptcy Act of 1841 (5 Stat. 440) had no such provision. Yet its requirement for "pro rata" distribution (§ 5) was recognized by Mr. Justice Story, its draftsman, as permitting a secured creditor to prove only for the balance of his claim as remained after crediting the value of the security. *Ex parte City Bank of New Orleans*, 3 How. 292, 315. That rule of construction followed the long established English bankruptcy rule. See Mr. Justice White, dissenting, 173 U. S. at pp. 153–155. As stated by Lord Eldon in *Ex parte Smith*, 2 Rose Bank. Rep. 63, 64, until the secured creditor's claim has been reduced by deducting the value of the security "it is impossible correctly to say what the actual Amount of it is."

of contract. And the reason for that conclusion was based on the theory that since "the creditor's rights in the trust fund are established when the fund is created, collections subsequently made from, or payments subsequently made on, collateral, cannot operate to change the relations between the creditor and his co-creditors in respect of their rights in the fund." (p. 140.) For that reason it was held that the claims of creditors are to be "determined as of the date of the declaration of insolvency." (p. 147.) There is serious question whether that foundation has not been swept away by *William Filene's Sons Co.* v. *Weed,* 245 U. S. 597.

Mr. Justice Holmes stated in the *Weed* case (p. 602): "But when the courts without statute take possession of all the assets of a corporation under a bill like the present and so make it impossible to collect debts except from the court's hands, they have no warrant for excluding creditors, or for introducing supposed equities other than those determined by the contracts that the debtor was content to make and the creditors to accept. In order to make a distribution possible they must of necessity limit the time for the proof of claims. But they have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made."

That theory runs counter to the assumption in the *Merrill* case (173 U. S. at p. 136) that a creditor acquires a "vested interest in the trust fund" antedating distribution. For if that assumption were valid, the claim in the *Weed* case, which had matured after the proceedings had been instituted, would have been disallowed. Such an assumption would likewise fail to take heed of the admonition of Mr. Justice Holmes that "supposed equities other than those determined by the contracts that the debtor was content to make and the creditors to accept" are not to be recognized.

Yet, assuming *arguendo* that the premise of the *Merrill* case has survived, the answer to the proposition that application of the bankruptcy rule would result in impairment of obligation of contract was completely answered by Mr. Justice White (173 U. S. at p. 152): ". . . the preferential right arising from the contract of pledge is in nowise impaired by compelling the creditor to first exercise his preference against the security received from the debtor, and thus confine him to the specific advantage derived from his contract. Further, however, as the contract, construed in connection with the law governing it, restricts the secured as well as the unsecured creditor to a ratable dividend from the general assets, the secured creditor is prevented from enhancing the advantage obtained as a result of the contract for security, by proving his claim as if no security existed, since to allow him to so do would destroy the rule of ratable division, subject and subordinate to which the contract was made." And see Glenn, Liquidation (1935) § 530.

This analysis of the *Merrill* case is germane to the present problem not merely to focus the historical setting of the rule which we are asked to enforce. It is especially important because we are now asked to extend that rule to a special type of *unsecured* creditor.

The surety who seeks its protection has an *unsecured* claim for $68,500. It seeks to gain the advantages which a secured creditor with a claim of $135,000 would have, i. e. the right to receive dividends on that basis. To deny the surety that preference would be no invasion of "prior contract rights," no impairment of obligation of contract, under the theory of the majority in the *Merrill* case. This surety neither has nor had any claim which was secured. Nor did it have any fixed and liquidated claim at the date of the declaration of insolvency. Its claim was always unsecured and it matured, as in the *Weed* case, after the appointment of the receiver. Nevertheless, this

surety, though it would fail to gain the preferred position of a secured creditor under the test of the *Merrill* case, is allowed to reach that position through the back door of subrogation.

It is ordinarily true that a surety succeeds to all of the rights and remedies of the creditor, including the latter's priority. *Lidderdale's Executors* v. *Executor of Robinson*, 12 Wheat. 594. But that is no inexorable rule. As this Court stated in *Memphis & Little Rock R.* v. *Dow*, 120 U. S. 287, 301–302, "The right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice." In determining whether it would be fair or equitable to allow the subrogation to the full extent of the creditor's rights and remedies, consideration will, of course, be given to the prejudice, if any, suffered by other creditors. But the mere fact that the other creditors will not be worse off than if the surety's principal had pressed the claim is not the sole solvent of the problem. We are not dealing with a mechanical rule. The question remains whether justice requires, or policy permits, the surety to succeed to his principal's privileged position.

Such considerations frequently are a barrier to any subrogation; at other times they may cut down the rights of the surety and give him less than his principal could exact. Illustrations of the former are *German Bank* v. *United States*, 148 U. S. 573, where subrogation was denied because it arose from conduct which was tortious; and *United States* v. *Ryder*, 110 U. S. 729, where a surety on recognizance bail was denied subrogation to the rights of the United States. In the *Ryder* case, subrogation was denied because, *inter alia,* its allowance "would be to aid the bail to get rid of their obligation, and to relieve them from the motives to exert themselves in securing the appearance of the principal. Subrogation to the latter

remedies would clearly be against public policy by subverting, as far as it might prove effectual, the very object and purpose of the recognizance." *Id.*, p. 737.

Closer in point, however, are those cases which award the surety less rights than his principal had. Thus, *South Philadelphia State Bank's Insolvency*, 295 Pa. 433, 145 A. 520, held that while a surety was entitled to be subrogated to the rights of a State against an insolvent bank, the surety did not, in absence of statute,[2] acquire the State's priority. See Arnold, An Inequitable Preference in Favor of Surety Companies, 36 W. Va. L. Q. 278; (note) 81 U. Pa. L. Rev. 441. The theory of that case is that "the State's right to a preference over other creditors, being a sovereign right enjoyed for the benefit of all the people, cannot be transferred to individuals except by express legislative sanction." (295 Pa. at p. 440.) Though that case represents the minority view in the state courts,[3] it is recognition of the healthy principle that application of the rule of subrogation should not be reduced to a conceptualistic formula.

The sweep of that principle is illustrated by *Memphis & Little Rock R. Co.* v. *Dow, supra.* In that case the prior lien creditor had a claim with interest at 8%. To allow the surety the same rate of interest would not have put the junior lienor in a worse plight. But this Court disallowed that rate, pointing out (120 U. S. at p. 302) that the surety was entitled only to reimbursement. A similar approach in this case would be to ascertain the equities of the sure-

---

[2] By statute a surety of the United States succeeds to the latter's priority. R. S. § 3468, 31 U. S. C. § 193. It should be noted, however, that though the United States has priority against an insolvent (R. S. § 3466, 31 U. S. C. § 191) that priority has been held not to extend to an insolvent national bank. *Cook County Nat'l Bank* v. *United States*, 107 U. S. 445.

[3] See Arant, Suretyship (1931), p. 363.

ty's claim, not by looking for the principal's rights under its contract but for reasons why this surety should be accorded priority over other unsecured creditors. Equity has regard not only for the rights of other creditors (*Jenkins* v. *National Surety Co.,* 277 U. S. 258) but also for the stake which the surety has and which it is asking a court of equity to protect. A court of equity should neither "come to the aid of one" whose equity is "subordinate until claims superior in equity" have been satisfied (*American Surety Co.* v. *Westinghouse Electric Mfg. Co.,* 296 U. S. 133, 136), nor create superior equities on behalf of one who can show no more compelling reasons for preferred treatment than can those with whom he competes. Under such an approach, this surety would be denied a superior equity.

Here, the surety has only an unsecured claim of $68,500. Any reason for continuation of the discrimination against the general depositors of this bank disappeared when the surety's creditor was paid. No equity has been suggested for allowing this surety preferred treatment. It was paid to assume the risk of insolvency of the bank. It was paid by the bank itself. And it has not been shown that it charged a lower rate because of the rule of the *Merrill* case. In view of those circumstances, it should not be allowed the lion's share. It is entitled to reimbursement but certainly in no greater an amount than the run of depositors. It is no answer to say that such a result would give the general depositors a windfall. Unless subrogation is to be a mechanical formula, this surety should be required to establish its special equity to preferred treatment—reasons why it, unlike any other unsecured creditor, should enjoy the benefits of the discriminatory rule of the *Merrill* case.

Finally, it is suggested that if the surety is not allowed this preference, much will be left to "caprice or accident,"

since the surety would have been entitled to share on the basis of the full amount if it had satisfied the creditor's obligation at the very outset. The answer to that is that we would then have to determine whether the *Merrill* case has survived the *Weed* case (See Clark, Proof by Secured Creditors in Insolvency and Receivership Proceedings, 15 Ill. L. Rev. 171), and, if so, whether it should be overruled. It is sufficient at this time to say that, in view of the flimsy basis on which the *Merrill* case rests, and the oppressive nature of the rule it fashioned, it should not be extended.

MR. JUSTICE BLACK concurs in this dissent.