**In re IDK LOGGING, INC., Debtor.**

**Dan O'ROURKE, Trustee, Plaintiff,**

**v.**

**RAMEY TRUCK & EQUIPMENT COMPANY, INC., Defendant.**

**Bankruptcy Nos. 88–01599–K10, A89–0088–K10.**

United States Bankruptcy Court, E.D. Washington.

July 2, 1990.

Michael G. Thompson, Dan O'Rourke, Spokane, Wash., for trustee.

Peter A. Witherspoon, David Hellenthal, Spokane, Wash., for defendant, Ramey Truck & Equipment.

## MEMORANDUM OPINION

L. WARDEN HANEL, Bankruptcy Judge.

The chronologies set out by the parties are relatively similar. The point of divergence comes when each applies the facts to the law. The facts as they are presented to the court are as follows. David Rogne is the President of IDK Logging, Inc. (hereinafter IDK) and his wife Sandra is the Secretary of the corporation. Over a three year period IDK entered into contracts with Ramey Trucking as listed below.

On January 11, 1985 Ramey Trucking (hereinafter Ramey) and First National Bank (hereinafter Bank) entered into a Dealer's Repurchase Agreement with Full Recourse wherein Ramey had issued conditional sales contracts to IDK and the Bank had taken the option of buying each of the contracts.

September 4th of that year, Ramey sold the following property to IDK on an Installment Sales Contract:

1970 used Log Truck

1963 used Page Log Trailer

Used Log Loader # 222571

This property was to be the collateral for the total purchase price of $46,541 which included 14 percent interest.

On September 5th, Ramey assigned the first installment contract to the Bank, giving them full recourse as previously agreed. The UCC–1 Financing Statement for the equipment was filed on September 16, 1985 with Department of Motor Vehicles.

Ramey sold the next group of equipment which consisted of a used 1971 log Truck, a used 1968 Frehauf log trailer and a used Prentice log loader # 1886 to IDK, on installment contract and security agreement for $55,186 at 14 percent interest. The third installment contract and security agreement related to a Log Skidder and used Swinging Grapple and which Ramey sold to IDK for $83,212 at 14 percent interest on May 5, 1986.

The Skidder and Grapple contracts were assigned to the Bank on the 16th of May, 1986. A UCC–1 Financing Statement on the third contract was filed June 12, 1986 with Department of Motor Vehicles. Although the Financing Statement identified the debtor as David and Sandra Rogne, in their individual capacity, the signature line acknowledged each signed the document in his/her corporate capacity as president and secretary of IDK Logging. The trade name itself was listed as "IDK Logging", Ramey was described as a secured party and the Bank as an assignee of the secured party.

Ramey also sold IDK a used Crawler Tractor and used Tree Sheer by installment contract and security agreement on November 21, 1987. The total purchase price for this fourth contract was $35,168 (including a 14 percent finance charge). Ramey assigned this contract to the Bank on November 24, 1987. The Financing Statement for this equipment was filed one week later with the same format as the previous statement listing Rogne as the debtor, IDK Logging under trade name, Ramey Trucking as the secured party and the Bank as the assignee of the secured party.

On July 20, 1987 Ramey sold to IDK by installment contract and security agreement a consolidation of the contracts entered into on September 4 1985, January 8 1986 and November 21 1987. The property in the former contracts was used as collateral for the consolidated contract.

By March 16, 1988 IDK owed the Bank $133,000, as did Ramey due to the full recourse agreement and Ramey's status as surety on all of the contracts. Between that date and March 19, 1988 IDK delivered all of the property listed above to Ramey because IDK was unable to cure its default. The fair market value of the property at that time appears to have been $66,856.

Ramey expended $37,394 restoring the property and subsequently sold it for $95,-

750. Consequently, Ramey asserts that it has an unsecured claim of $66,217.

On April 12, 1988 Ramey paid the Bank $133,073, the entire balance due. Having received full payment, the Bank filed termination statements to end its secured claim eight days after it received the amount owing. On May 12, 1988 IDK Logging filed for Chapter 7 relief.

This matter was initially brought before the court by way of adversary wherein the Trustee sought:

(1) An order avoiding the transfer of the equipment and other property from the debtor to defendant and avoiding defendant's claim of lien upon and in the same;

(2) an order directing defendant to turn over the equipment and other property to plaintiff;

(3) judgment against the defendant in the amount of the fair market value of the equipment which was initially thought to be $103,000 and subsequently amended to $135,000, with interest from March 18, 1988, and

(4) an award of reasonable attorney's fees, costs and disbursements.

Three months after filing an answer to the amended complaint, the defendant brought a motion for summary judgment. The Trustee then filed a cross-motion for summary judgment. The Court bases the following decision on the pleadings contained within the court files as well as the hearing held March 21, 1990 in connection with this matter.

### ISSUES

The Trustee in this Chapter 7 bankruptcy asserts Ramey Trucking is an unsecured creditor whose interest in specific equipment is subject to avoidance by the Trustee under section 547 of the Bankruptcy Code. Ramey moves for summary judgement claiming that as surety to First National Bank, it is subrogated to all the rights, remedies and securities of the Bank. Thus Ramey claims to be a secured creditor because the security interests were created by the debtor, IDK, and were perfected continuously and without interruption through filing and or possession.

### HOLDING

The first question to be decided by the Court is whether Ramey Trucking's interest in the equipment transferred according to the installment sales contracts was perfected or unperfected. If the court finds the interest was perfected its inquiry begins with section 547 of the Bankruptcy Code.

The Trustee can avoid the transfer of the debtor's interest in the property if certain conditions are met. The transfer must be:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the dated of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In the case at bar the transfer of the equipment occurred between March 16 and 19, 1988. The debtor, IDK, transferred the property because it was in default on the installment contracts with Ramey and by March 16, 1988 the Bank was owed $133,000. Because the Bank had received full payment, on April 20, 1988, it filed termination statements to end its claim. The Chapter 7 bankruptcy was filed by IDK on May 12, 1988. The time-line and nature of the transfer indicates that if the interest in

the equipment given to Ramey Trucking was a secured interest, the court's point of inquiry would have been with section 547. However, since Ramey's interest in the transferred equipment was not perfected the court must ultimately look to section 544 of the Bankruptcy Code to determine whether the Trustee can avoid the transfer.

■ RCW 46.04.670 governs the classification of equipment. In the instant case, each piece of equipment is "capable of being moved upon a public highway and in, upon, or by which any persons or property is or may be transported or drawn upon a public highway, ..." and is therefore a "vehicle". As such, a security interest therein can only be perfected by "the department's receipt of: (a) The existing certificate, if any, and (b) an application for a certificate of ownership containing the name and address of the secured party and (c) tender of the required fee". RCW 46.-12.095. Perfection by possession is only accomplished where the security interest is in letters of credit and advices of credit, goods, instruments, negotiable documents or chattel paper. RCW 62A.9–305. Although perfection of Ramey's security interests was initially realized, the equipment subsequently became unperfected. The termination statements filed by the Bank in April of 1988 ended any perfection that Ramey had in the equipment. The termination was noted directly on the original Financing Statements and would have provided notice to all that the security interests set out in those documents was no longer in force. Hence, Ramey lost its perfected security interest at the filing of the termination statements and its security interests are avoidable by the Trustee if the requirements of section 544 are met.

■ Under section 544(a) the Trustee obtains a hypothetical judicial lien on all property that the debtor has an interest in and that the creditor could obtain. With this "strong-arm" clause the Trustee's interest becomes superior to the rights of most unsecured Article 9 creditors. Although there are exceptions to section 544, none apply where the interest at issue is equipment. Similarly, we need not consider the exceptions which might arise given different fact scenarios such as where the creditor lets the secured interest lapse prior to the bankruptcy filing and subsequently reperfects. At no time after the termination statements were filed or after the bankruptcy filing did Ramey attempt to perfect its interest. Since Ramey's interest was unperfected at the time of the bankruptcy filing, the Trustee has a hypothetical lien on IDK's property and Ramey's interest in the equipment is subject to avoidance by the Trustee pursuant to section 544.

■ In its motion for summary judgement, Ramey asserts its rights predate those of the Trustee under the Doctrine of equitable subrogation. Ramey's assertion fails at its inception because it is based on the erroneous assumption that Ramey's interest in the equipment is secured.

Ramey supports its position with case law which indicates that the rights of a subrogee attach when he pays a debt. *Hustad v. Reed*, 133 Mont. 211, 321 P.2d 1083 (1958). Also cited for the equitable subrogation proposition is *Old Kent Bank v. City of Detroit*, 178 Mich.App. 416, 444 N.W.2d 162 (1989), where the court held that as between competing claims of the surety and the lender the surety would prevail because its interest predated the lender's security interest. Although correctly cited for each of these propositions, neither case involves a trustee in bankruptcy. As previously stated, section 544 of the Bankruptcy Code alters the usual interest of unperfected creditors.

Although the court in *American Surety Co. v. Bethlehem Bank*, 314 U.S. 314, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941) did state that a "surety is a special kind of creditor" whose "claim against the principal is secured by the right of subrogation to the remedies of the creditor which it has been compelled to pay", this case is dissimilar to the one at bar in that at no time did the creditor, to whom the subrogee was subrogated, lose or terminate its perfection. In fact the *American Surety* court went on to hold that "[t]he extent of the participation of the surety, and therefore that of the other creditors, would depend on how,

when, and against whom the secured creditor presses its claim". 314 U.S. at 318, 62 S.Ct. at 229. Ramey became unsecured when the termination statements were filed by the Bank. This unsecured position must be considered in the subrogation analysis.

This finding is supported by *Ernst v. White Motor Credit Corp.* 28 B.R. 289 (Ohio 1983) cited by the Trustee. In *Ernst* the trustee filed an action for turnover of collateral or equivalent free of liens. In its holding for the trustee, the court found that where the financing statement was filed in the wrong county the creditor's security interest was not perfected. The court went on to find that generally "an unperfected security interest is not effective as against a trustee in bankruptcy's lien" and that in any case "[t]he principles of equity would be operative, however, to rectify only the relationship of the secured party and the debtor". 28 B.R. at 290–91. Because equity acts *in personam* and not *in rem*, the court felt it would be unfair to penalize third parties who were not involved in the act which caused the interest to be unperfected.

Thus, although Ramey may have been subrogated to the rights of the Bank and to other unsecured creditors at the time of the bankruptcy filing, the unique position created by the strong-arm clause of section 544 places the Trustee ahead of any unsecured creditors and Ramey's theory of equitable subrogation must fail.

In its last argument Ramey asserts the Bank's termination statements are ineffective as between the subrogee and the debtor. Ramey attempts to support this proposition with *U.S. Building & Loan Assn. v. Salisbury*, 217 Cal. 35, 17 P.2d 140 (1933). In this non-bankruptcy case the Defendant claimed title to lots as the purchaser under foreclosure of deed of trust which was prior in time to the Plaintiff's mortgage. The facts in this case are distinguishable. On appeal the court held "where the holder of an outstanding senior mortgage through mistake discharges it of record and contemporaneously takes a renewal mortgage, he will not in the absence of paramount equities be held to have subordinated his securi-

ty to an intervening lien". 17 P.2d at 143. In the instant case, the termination statements were not accidentally filed. Similarly, there was no contemporaneous renewal, and re-perfection by possession is not possible in this classification. Hence, the line of cases cited by Ramey to support its proposition that termination statements are ineffective as to the subrogee are insufficient to overcome section 544.

There being is no genuine issue of material fact, it is the conclusion of the court and the court summarily finds for the plaintiff on its cross-motion.