**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2922
_____

PENN BUSINESS CREDIT, LLC

v.

ALL STAFFING, INC.; BROCK EMPLOYEE SERVICES, INC.;
STANLEY J. COSTELLO, JR.; ANGELA L. COSTELLO,
also known as ANGELA L. VALUSEK;
ALFONSO J. SEBIA; PAMELA G. SEBIA; GARBER GROUP, LTD.;
J.C. DATA ENTERPRISES, INC., also known as JET DATA;
A & S ASSOCIATES; COSTELLO'S RESTAURANT;
UNITED STATES OF AMERICA

Alfonso J. Sebia;
Pamela G. Sebia,
                              Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-11-cv-05366)
District Judge: Hon. Legrome D. Davis
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 8. 2014

BEFORE: VANASKIE, GREENBERG, AND COWEN,  Circuit Judges

(Filed: January 5, 2015)

_____

OPINION*
_____

COWEN, <u>Circuit Judge</u>.

The defendants-appellants, Alfonso and Pamela Sebia ("Appellants"), appeal an order denying their motion to amend their answer to assert a cross-claim against the United States under the Administrative Procedure Act ("APA"). We will affirm.

**I.**

Because we write solely for the parties, we will only set forth the facts necessary to inform our analysis.

The plaintiff, Penn Business Credit, LLC ("PBC"), loaned one million dollars to All Staffing, Inc. ("ASI"), pursuant to which ASI signed a note and security agreement in favor of PBC. Appellants, among others, guaranteed the note. The security agreement provided that, in the event of a default, PBC had the authority to open any mail addressed to, and endorse any checks payable to, ASI. ASI defaulted on the loan, and PBC obtained two United States Treasury checks, which, in accordance with the provisions of its security agreement with ASI, it endorsed and deposited into its bank account. ASI objected to PBC's actions and demanded the return of the funds. Ostensibly dissatisfied with whatever response it received from PBC, ASI filed a Notice of Reclamation with the

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

United States Department of the Treasury ("Treasury Department").

Before the Treasury Department acted, PBC filed suit in state court against ASI and the guarantors of the loan, seeking, in part, a declaratory judgment that it could retain the disputed funds in satisfaction of ASI's outstanding loan balance. It later filed an amended complaint in state court naming the United States as a defendant, who then removed the case to the United States District Court for the Eastern District of Pennsylvania.

Following removal, the Treasury Department reclaimed the funds underlying the checks. The United States then moved to dismiss PBC's claims against it. Appellants also moved to amend their answer to assert a cross-claim against the United States under the APA. They claimed that, had the Treasury Department not reclaimed the funds that PBC had deposited into its account, the loan to PBC would have been satisfied and their obligations extinguished. Instead, as the allegedly direct result of the Treasury Department's decision to reclaim the funds, PBC initiated foreclosure proceedings against them. In a single order, the District Court denied the Appellants' request to amend, concluding that any such amendment would be futile because they lacked standing to assert a claim under the APA and remanded the remainder of the action to state court. Appellants now seek review only of the portion of the District Court's order denying their motion to amend.[1]

---

[1] Despite initial disagreement, Appellants and the United States now concur that we have jurisdiction to review the District Court's order denying Appellants' request to amend their answer. *See* 28 U.S.C. § 1447(d); *City of Waco v. United States Fidelity & Guar. Co.*, 293 U.S. 140 (1934); *Powers v. Southland Corp.*, 4 F.3d 223, 226 (3d Cir. 1993); *Carr v. Am. Red Cross*,

**II.**

We review the denial of a motion for leave to amend a pleading for abuse of discretion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Pursuant to Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The District Court noted that amendment should be freely given in the absence of specific reasons, "such as . . . futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original [pleading] or if the amended [pleading] cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

Article III, section 1 of the Constitution confers judicial power upon the federal courts, but limits the jurisdiction of these courts to "Cases" and "Controversies." Art. III, § 1. The doctrine of standing was developed to help "identify those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To establish standing, a plaintiff must demonstrate (1) an injury in fact, (2), that the injury is "fairly traceable" to the actions complained of, and (3) that the injury will likely be redressed by a favorable decision. *Id.* (citation omitted). Appellants are unable to meet the second prong.

---

17 F.3d 671, 677-78 (3d Cir. 1994).

4

The causation requirement of standing requires that the complained of injury be "fairly traceable to the challenged action of the defendant, *and not the result of the independent action of some third party not before the court.*"  *Duquesne Light Co. v. EPA*, 166 F.3d 609, 613 (3d Cir. 1999) (quoting *Bennett v. Speak*, 520 U.S. 154, 167 (1997)) (emphasis added).  Appellants' own recitation of the facts are instructive.  Although they allege that the Treasury Department's determination *caused* PBC to return those funds, they iterate that "[a]s a direct result of the Treasury Department's determination, *PBC initiated foreclosure proceedings* against [them], have obtained judgment, and . . . at the least, have taken ownership and possession of [certain] property." (Appellants' Br. at 26) (emphasis added.)  As Appellants make clear, while PBC may have been *prompted* to act by the Treasury Department's action, in the absence of a mandate from the Treasury Department, they cannot demonstrate that the harm they suffered from PBC's decision to foreclose against them was "fairly traceable" to the Treasury Department's decision to reclaim the funds.  Accordingly, they have not established standing to sue under Article III.

Nor have Appellants established prudential standing.  Section 702 of the APA provides that only "[a] person suffering legal wrong because of an agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The Supreme Court has interpreted this provision as imposing a "prudential standing" requirement in addition to the requirements imposed by Article III of the Constitution.  *Nat'l Credit Union Admin. v.*

*First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998). Prudential standing requires, among other things, that "the interest sought to be protected by the complainant must be arguably within the zone of interests to be protected or regulated by the statute in question." *Id.*

The District Court determined that Appellants do not fall within the APA's zone of interests and Appellants do not seriously dispute this. Rather, they contend that PBC, as an endorser of the Treasury checks, falls within this zone, a point that none of the parties appear to dispute. Getting them only so far, Appellants, invoking the doctrine of subrogation, next assert that as guarantors of the loan, they are entitled to step into PBC's shoes and assert claims that PBC could have asserted in its position as creditor.

As the Supreme Court has explained, subrogation is a doctrine whereby "one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed *against that other*." *Am. Surety Co. of New York v. Bethlehem Nat'l Bank of Bethlehem, Pa*, 314 U.S. 314, 317 (1941) (emphasis added). In the current context, that would entitle Appellants to exercise remedies that PBC possessed against ASI.

Appellants, however, argue that because PBC would be within the zone of interests to be protected or regulated by the APA, and would therefore be entitled to assert a claim against the Treasury Department for reclamation of the funds at issue, that under the doctrine of subrogation, they should likewise be permitted to pursue such a claim against the United States. More to the point, they argue that because they were forced to pay a

6

debt owed by ASI, they "subrogate to the rights and remedies of PBC, including PBC's right to seek judicial relief that may result in repayment of the funds improvidently reclaimed by the Treasury Department." (Appellants' Br. at 37.)

But Appellants point to no case law, and we are not aware of any, in which a court has held that the doctrine of subrogation applies to situations such as this, where the one who was compelled to pay a debt [Appellants] owed by another [ASI], would be entitled to exercise the rights that a creditor possesses against an unrelated third party that took no part in the loan agreement and is not in a creditor-debtor relationship with either party [the United States]. We therefore reject Appellants' attempt to expand the doctrine of subrogation to contexts to which there is no indication it was ever intended to apply.

**III.**

In light of the foregoing, we conclude that the District Court did not abuse its discretion by denying Appellants' motion to amend. The order of the District Court entered on May 9, 2012 will be affirmed.