MARY ALICE ABRAHAM, APPELLEE, V. SIDNEY DALE ABRAHAM AND BESS ABRAHAM, APPELLANTS.

279 N. W. 2d 85

Filed May 15, 1979. No. 41992.

Edward D. Hotz of Hotz, Kluver & Kizer, for appellants.

S. J. Albracht of Lathrop, Albracht & Swenson, for appellee.

Heard before BOSLAUGH, CLINTON, and WHITE, JJ., and RIST and WINDRUM, District Judges.

WINDRUM, District Judge.

Mary Alice Abraham, appellee, was the petitioner in the action originally filed. Sidney Dale Abraham was the respondent.

On October 8, 1976, petitioner filed her petition in the District Court for Cherry County, Nebraska, against respondent, Sidney Abraham, for a dissolution of marriage. In the answer, the respondent, Sidney Abraham, alleged among other things, that all of the personal property and effects of the parties had been evenly divided, but that there remained for distribution the unpaid balance of a certain contract for the sale of real estate and personal property to a Mr. and Mrs. Francke, on which there then remained a balance due of $39,000. The respondent further answered that he was indebted to Bess Abraham, his mother, in the sum of $25,000 for money advanced to the parties during the marriage, and that said indebtedness was due and should be considered by the court in making an equitable division of the contract of sale.

Thereafter, on June 30, 1977, the petitioner filed an application for permission to join a third party respondent, Bess Abraham, alleging that Bess Abraham claimed to have an interest in proceeds from the sale of property which the petitioner claimed as a marital asset. Permission to join Bess Abraham as a party was granted and an amended petition was filed by the petitioner on June 30, 1977. Petitioner alleged as follows: "Petitioner fears that unless restrained and enjoined, the respondent, Bess Abraham, will obtain possession of certain proceeds due and owing pursuant to the aforementioned land sale contract and appropriate funds to her personal use to the detriment of the petitioner herein." On July 13, 1977, petitioner filed an affidavit in which she stated that after the filing of her original petition, she learned there was in existence a purported assignment, of the proceeds due under the land contract above mentioned, to Bess Abraham, and that she, the petitioner, emphatically stated that any signature of hers on such an assignment was a forgery and not her true signature.

Bess Abraham answered the petitioner's amended petition and alleged that on or about December 2, 1971, petitioner and the respondent, Sidney Abraham, unconditionally assigned and transferred their rights to the proceeds of the land contract to Bess Abraham and alleged that the land contract was not a marital asset subject to distribution. The respondent, Sidney Abraham, likewise filed an amended answer to petitioner's petition and substantially agreed with his mother. After appropriate proceedings, the matter was transferred to the District Court for Douglas County, Nebraska, where a hearing was held, commencing on November 2, 1977. The court found that the marriage was irretrievably broken, and was, therefore, dissolved. The court awarded to each party the personal property then in his or her respective possession, free and clear of any claim on the part of the other, and ordered the assignment of the land contract by the respondent, Sidney Abraham, to the defendant, Bess Abraham, as being valid, but the assignment by the petitioner to Bess Abraham was invalid and of no force and effect for the reasons that: (a) Petitioner's assignment of the proceeds of the land sale contract was without adequate consideration, and (b) petitioner's assignment was procured by the misrepresentation that the purpose of the assignment was to place the proceeds of the land sale contract beyond the reach of Sidney's creditors.

After the overruling of a motion for new trial, both the respondents appealed.

Sidney and Mary Abraham were married in Omaha, Nebraska, on August 7, 1948. Between that date and 1967 they lived and worked in various places, a good part of their employment being in gambling casinos in Nevada. From October 1965 to June 1967 they lived mostly in Omaha, and their only employment during that period was an unsuccessful 3 months in a Sioux City, Iowa, restaurant venture.

In June of 1967, Mary and Sidney Abraham purchased a drive-in restaurant in Valentine, Nebraska. They were required to pay a $5,000 downpayment. There is a disagreement as to whether or not the mother, Bess, loaned them the downpayment. The husband and wife successfully operated the restaurant.

During the marriage of the parties, respondent Bess allowed her son, Sidney, to write checks upon her account. There is various testimony by the respondents and agreement between the two respondents that respondent Bess advanced several sums of money to respondent Sidney, and that on July 24, 1968, she assumed a $20,250 obligation of Sidney's at the First National Bank of Valentine. Bess testified she paid a substantial amount directly to the brokerage firms of Merrill, Lynch, Pierce, Fenner & Smith, Inc. and Lamson Brothers on behalf of Sidney and Mary. She did not take notes from her son and daughter-in-law because they were family. Petitioner, testified that she knew very little, if anything, about the loans and nothing of the stock purchases. At the trial, Sidney estimated the indebtedness to his mother at $50,000.

In October of 1971, respondent Sidney Abraham was convicted of purchasing stolen meat, a felony. On October 21, 1971, Sidney executed a mortgage conveying the real estate upon which the restaurant was located to his mother, as mortgagee, in the sum of $65,000. This mortgage was not signed by petitioner. On December 2, 1971, the petitioner and respondent Sidney entered into a contract selling the restaurant, including the real and personal property, for the sum of $65,000, plus inventory, payable $1,000 as downpayment, $15,240 to be paid on or before February 1, 1972, and the balance to be paid in installments. The contract provided that at the time the $15,240 payment was made by the buyers, the sellers would secure discharges from amounts owed

on a contract of sale due to Eve Eads, from whom they had originally purchased the property; a mortgage to the Small Business Administration; the mortgage due Bess Abraham; and an amount for inventory due Eve Eads. Shortly thereafter, petitioner and Sidney Abraham each assigned to Bess Abraham his or her respective interest in the contract of sale. In consideration of such assignment, Bess Abraham agreed to pay the indebtedness due Eve Eads under a contract of sale of real estate; to pay the indebtedness due the Small Business Administration secured by a mortgage on the real estate covered by the contract of sale; and to discharge of record her own mortgage dated October 21, 1971. While originally petitioner denied signing said assignment, it is quite evident that she did so. An escrow agreement was entered into providing that all the payments due under the contract of sale were to be paid into the escrow account. The $15,240 payment was made by the sellers into the escrow account on December 2, 1971. On December 8, 1971, payment to the Small Business Administration was made. Conversation was had with the attorney who handled the sale of the property on December 2, 1971, concerning the preparation of an assignment. There is a dispute as to whether or not petitioner was present or discussed the matter. There is likewise a dispute as to whether or not there was conversation concerning the purpose of the assignment, that is, that it would protect the petitioner and the respondent, Sidney Abraham, from losing the proceeds on the contract if a civil suit were brought for stolen meat that was purchased by respondent, Sidney Abraham, for which he was convicted and later incarcerated. Be that as it may, the attorney prepared the assignment and, by letter dated December 15, 1971, conveyed the assignment to the petitioner at her address in Omaha. Petitioner called her hus-

band concerning the assignment and obeyed his orders to sign it.

On August 1, 1972, a special account entitled "Bess Abraham Special" was opened in the First National Bank of Valentine, and the $4,000 payment received from the purchasers of the contract of sale was therein deposited. The name of the account was later changed to that of the respondent, Sidney Abraham, but all three parties to this action were authorized to write checks thereon. The special account continued until October 29, 1975, at which time Bess Abraham terminated it. An examination of this special account reveals that both respondents wrote checks upon it repeatedly after the initial opening thereof and, at a later date, petitioner wrote checks on the account. Respondent, Sidney Abraham, issued checks totaling $21,337; respondent, Bess Abraham, issued checks totaling $20,238; and petitioner issued checks totaling $3,677 from the time the special account was opened until the action was brought for dissolution of marriage. Petitioner wrote checks for $2,500 for a new automobile (after getting permission to do so from respondent, Sidney Abraham), for power company bills, telephone bills, etc., and for $1,000 when she filed for divorce. A similar examination of the account shows there were many deposits of currency and various deposits of salary checks by the respondent, Sidney Abraham.

Further, cancelled checks appearing in the account indicate the payment of at least two substantial debts due from respondent Sidney to third persons. Respondent Sidney testified that one of the debts was paid by his mother, so, in effect, he was attempting to count the indebtedness twice. He further testified concerning another substantial debt, alleging it was he who paid it. All of this, even though both of the checks were written from the special account.

An examination of the tax return of petitioner and respondent Sidney indicates the interest due on the contract of sale was reported by them as income. No later tax returns were presented.

In addition to all the above outlined facts, the respondent Sidney admitted that at the time he executed a mortgage to his mother in the amount of $65,000, the amount thereof was arrived at, not by estimation of how much he owed his mother, but rather, what he felt the security was worth. This near a time when he alleged his total indebtedness to his mother was $25,000.

Petitioner maintains, in her brief, that to be valid and binding, an assignment must be: (1) Supported by consideration and (2) free from the elements of fraud, duress, or coercion.

There is sufficient evidence in the record that there was indebtedness due from respondent, Sidney Abraham, to respondent, Bess Abraham, which would constitute consideration. However, the Small Business Administration loan was paid before the assignment was executed. Presumably the amount due on the contract of sale due Eve Eads was likewise paid before the assignment, as it was to be paid out of the downpayment. Petitioner was in no way indebted to respondent Bess. In that event, unless petitioner intended that the assignment was to constitute payment of her husband's debts to his mother, which, of course, would constitute consideration, there was no consideration for her assignment.

Consideration for an agreement or a promise is sufficient if there is any benefit to the promisor or any detriment to the promisee. There must be an assumption of a duty or obligation by the assignee, and a benefit conferred upon the assignor. Dorland v. Dorland, 175 Neb. 233, 121 N. W. 2d 28; Pike v. Triska, 165 Neb. 104, 84 N. W. 2d 311.

The court's determination that there was no con-

sideration for the assignment by petitioner is supported by the evidence. The court could, in arriving at such a determination, determine from the evidence that not only was there not to be any benefit flowing to petitioner, but that there was no assumption of a duty or obligation by the assignee, because none of the parties ever intended that the assignment be enforceable.

"Assignments may be void or voidable at the option of the injured party if procured by fraud, duress, coercion, or undue influence. In determining whether fraud, duress, or undue influence was brought to bear upon the assignor, resort must be had to the rules governing contracts generally. Thus, in determining whether fraud or undue influence exists, with respect to assignments, the court must of necessity look to the surrounding circumstances such as the situation of the parties that control their actions, but a mere suspicion of fraud or undue influence is insufficient to vitiate the assignment." 6A C. J. S., Assignments, § 58, p. 684.

In cases of fraud, as between assignor and assignee, the payment of an adequate or inadequate consideration for the assignment is an important circumstance as bearing upon the fairness of the entire transaction. 6A C. J. S., Assignments, § 60, p. 687.

Where consideration is grossly and shockingly inadequate, inadequacy is generally regarded as fraud. 6A C. J. S., Assignments, § 61, p. 690. In this case there could be found no consideration at all, but if so, it was grossly inadequate when compared to the value of the interest of petitioner's one-half of the contract of sale.

From the recitation of all the above-described facts, and considering the fact that respondents' documentation of the various alleged loans from mother to son was lacking in many respects, we cannot say that the trial court was wrong in determining that the assignment by the petitioner of her

one-half interest in the contract of sale of the restaurant, including the land upon which it sat, was obtained by a misrepresentation of a material fact upon which petitioner relied and acted.

Petitioner is awarded $750 in this court for attorney's fees to be paid by the respondent, Sidney Dale Abraham.

AFFIRMED.