**In re Scott A. WALSEY, Debtor.**

**Bankruptcy No. 80–01128A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 10, 1983.

Dale Goodman, Atlanta, Ga., for debtor.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

This matter is before the court upon the Chapter 13 debtor's objection to the claim of Fireman's Fund Insurance Company ("Fireman's Fund") on the grounds that the debt was incurred by the corporation in which the debtor is an officer. Thus, debtor contends that the debt is not a personal obligation. A hearing on this objection, inter alia, was held on August 24, 1982. The matter was taken under advisement by the court and the court requested a brief from the claimant within 10 days and it gave the debtor 10 days thereafter to respond. The claimant's letter brief was received in this office on September 3, 1982. However, the response was not filed until February 25, 1983.

In its brief, the creditor contends that since it paid a tax debt owed by the debtor [1] to the Georgia State Revenue Commissioner in the amount of twenty-five hundred dollars ($2,500.00) as surety on a tax liability bond, the creditor is therefore entitled to be placed in the same priority position under 11 U.S.C. Section 507 as the government taxing authority.

## JURISDICTION

We determine that this is a bankruptcy matter within section (d)(3)(A) of the Order of the District Court for the Northern District of Georgia adopted as an Amendment to its local rules on December 17, 1982.

---

1. We do not decide whether the other two individuals who signed the tax liability bond are also responsible for the tax indebtedness along with Scott Walsey since that issue is not before the court.

("Order") The Supreme Court decision in *Northern Pipeline Construction Company v. Marathon Pipe Line Company,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held that the delegation of jurisdiction to the bankruptcy courts as part of the Bankruptcy Reform Act of 1978 ("the Code") violates Article III of the United States Constitution. The Court's stay of the effect of the *Marathon* decision expired on December 24, 1982. *See* 51 U.S.L.W. 3475 (U.S. January 4, 1983) (No. 81–150 and 81–546). Therefore, at this time, the court is proceeding under the district court's Order.

Section (d)(2) of the Order provides in essence that, in bankruptcy matters, the orders of this court are effective upon entry unless stayed, appealed or certified by the bankruptcy court to the district court for review.

### FINDINGS OF FACT

1. On February 16, 1979, a Retailers and Consumption on Premises Liquor License Performance and Tax Liability Bond was issued to Scott A. Walsey, Franklin B. Trell and Raymond Majewski as principals, d/b/a The Pier, Inc.

2. The Retailers and Consumption on Premises Liquor License Performance and Tax Liability Bond made no reference to the individuals as corporate officers nor did it provide that the corporation was liable for payment of taxes rather than the individuals listed.

3. The remaining documents including the initial liquor application, the Retailer's Malt Beverage Bond and the Retailer's Wine Bond were signed solely by Scott Walsey as an individual and not as an agent or an officer of the corporation.

4. Scott Walsey is individually responsible for the tax indebtedness at issue. (*See* note 1, *supra*)

5. Fireman's Fund was the "surety company executing bond" on that document.

6. Regarding conditions of the bond, the document provided as follows:

NOW, THEREFORE, the conditions of this bond are such that if the Principal shall promptly pay to the Obligee all sums which may be due by said Principal as taxes, license fees, rental charges, or otherwise, including penalties and interest by reason of the operation of said business, together with expenses incurred by the State in the collection of amounts due the State, the nature and amount of such expenses to be determined by the Obligee but not to exceed ONE HUNDRED ($100.00) DOLLARS for the period covered by this bond, and shall, in the operation of said business, faithfully comply with all provisions of said Act, as amended, and with all rules and regulations now, or hereafter, promulgated by the State Revenue Commissioner under the authority of said Act, as amended, for the enforcement and administration of said Act, and with such other conditions as the State Revenue Commissioner may require in rules and regulations, then this bond shall be void; otherwise, it shall remain of full force and effect and shall be construed as a bond of forfeiture. This bond may be cancelled by the Principal, the Surety or the Obligee by giving sixty (60) days' notice in writing to each of the other parties hereto at their last known address, but no such cancellation shall affect the liability of either the Principal or the Surety occurring before the expiration date of such notice.

7. An official of the Georgia State Revenue Department wrote a letter to S.M. Williams of Fireman's Fund on December 18, 1980, which provided as follows:

"This will serve as your authorization to amend my letter of December 8, 1980, calling the above Performance and Tax Liability Bond to read as follows; ... we hereby file a demand for $2,500.00, which is the amount payable for 1979 (lines 11–12)."

[The December 8th letter is not in evidence.]

8. The December 18th, 1980, letter referred to in Paragraph 7 contained the following heading:

Re:  Fi. Fa. ST80–1182ABCD
     The Pier, Inc.
     29 W. Park Square
     Marietta, Ga.
     C–033–05–20797–7
     Bond SLR 4149723

(Emphasis added)

9. On January 26, 1981, Harold Gunby Insurance Agency, on behalf of Fireman's Fund, paid to the State Revenue Commissioner of the State of Georgia two thousand and five hundred dollars ($2,500.00) "[i]n full and final settlement of all claims under bond # SLR 4149723."

## ISSUE

Whether a surety company which paid taxes owed by the debtor to the Georgia State Revenue Commissioner is thereby entitled to the priority status which the government taxing authority would have had under Section 507 of the Code.

As discussed below, we hold that, despite the fact that the insurance company paid the claims of the Revenue Commissioner on behalf of the debtor and the fact that the debtor is individually liable on the bond, nevertheless the Code clearly provides that the subrogee does not hold the same position in the priority structure of Section 507 that the government would have held.

## APPLICABLE LAW

### A. INDIVIDUAL v. CORPORATE LIABILITY

Debtor contends in his response that the purpose of obtaining the various licenses was business related, that the licenses were to be used by the corporation and that, under Georgia law, beer, wine, and liquor licenses are not granted to corporations. Thus, debtor concludes, the tax was owed by the corporation and not by the debtor individually. However, debtor cites no caselaw or Georgia statute in support of this bare assertion.

■ From our research of the Georgia law, we conclude that state law contemplates individual liability for payment of taxes by one who engages in the retail sale of intoxicating beverage within the state. *See Jones v. Stewart,* 117 Ga. 977, 44 S.E. 879 (1903). [The court in *Jones v. Stewart, supra,* explained an earlier case and stated that "what this court really ruled was, that tax collectors were the officials designated by law to pass upon the *liability of an individual* to pay an occupational tax . . ." and to issue executions thereon. *Id.* at 986, 44 S.E. 879, (Emphasis added).]

### B. ASSIGNMENT v. SUBROGATION

Subrogation is substituting a third party in place of a party who has a claim against a second party. "Insurance companies, guarantors and bonding companies generally have the right to step into the shoes of the party whom they compensate and sue any party whom the compensating party could have sued." Black's Law Dictionary 1279 (5th ed. 1979).

■ We believe the payment of debtor's taxes entitled Fireman's Fund to proceed as subrogee of the Georgia Revenue Commissioner's claim against the debtor. We find no evidence however which would indicate that the State Revenue Department assigned its claim to Fireman's Fund upon being paid the tax indebtedness by the surety.

Fireman's Fund relies on the case of *In re Tampa Wholesale Electric, Inc.,* 409 F.2d 501 (5th Cir.1969). In that case, the Small Business Administration ("SBA") assigned its claim to the appellant. The SBA had filed a timely proof of claim for which it asserted priority status under the Old Act. Unlike the instant claim, no objection to the SBA's claim was filed by the trustee. The court held that the assignee could assert the priority position of its assignor. However, that case is inapposite to the factual situation at bar because there is no evidence before the court to warrant a finding that there was a valid assignment of the state's priority claim.

The term "assignment" under Georgia law signifies an act

by which one transfers to another or causes to vest in another, entire right, interest, or property which he has in realty or personalty. No formal language is necessary and if the language used in a transaction shows the intention of the owner of a right to assign it so that it becomes the property of another, then a legal assignment exists.

*King v. Gilbert,* 445 F.Supp. 479, 483 (N.D.Ga.1977). (Citations omitted)

In the present case there is no evidence which would warrant a finding that the state assigned its claim to Fireman's Fund.

The case is also dissimilar to the instant scenario because the Georgia Revenue Commission, unlike the SBA in *In the Matter of Tampa Wholesale Electric, Inc., supra,* does not depend on the assignability of its priority status in order that it may realize the true value of its claim at an early date. *Id.* at 502. To the contrary, the purpose of the bond is to assure that the state will be paid the taxes due. Thus, the State Revenue Office is not restricted in obtaining the tax from the surety by the fact that Fireman's Fund does not receive a priority position. Fireman's Fund was obligated to the State under its contract of surety regardless of the outcome of its claim against the estate of the debtor. Thus, the court's holding in *In the Matter of Tampa Wholesale Electric, Inc.,* does not aid the creditors' assertion. There is no showing that there was a valid assignment in this case. Moreover, the creditor was obligated to pay on the contract of surety regardless of whether it was thereby placed in the government's priority position.

C. SECTION 507(d)

█ Section 507 of the Code governs priorities. Subsection (d) of 507 provides that "[a]n entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is *not* subrogated to the right of the holder of such claim to priority under such subsection." 11 U.S.C. § 507(d). (Emphasis added)

The notes of the Committee on the Judiciary provide that "[s]ection 507(d) of the House amendment prevents subrogation with respect to priority for certain priority claims. Subrogation with respect to priority is intended to be permitted for administrative claims and claims arising during the gap period." S.Rpt. No. 989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787.

One authority clarifies, subsection (d) with regard to the specific priority claims listed in Section 507 in which a subrogee is not˙ entitled to priority under the Code.

An entity subrogated to the rights of a priority creditor who is within the wage priority of section 507(a)(3), or the employee benefit priority of section 507(a)(4), or the lay-away consumer priority of section 507(a)(5), *or the governmental units entitled to the priority of section 507(a)(6), does not partake of the priority status given the claimant to which the subrogee is subrogated.* The section does not speak to the issue of assigned claims.

Collier on Bankruptcy ¶ 507.07 at 507–49 (15th ed. 1982). (Emphasis added).

We conclude that Fireman's Fund, which was subrogated to the state taxing authority's claim against the debtor upon payment of debtor's tax liability, is not entitled to priority status under Section 507.

## CONCLUSION

We conclude that the law is clear: "under . . . [section] 507(d), . . . the subrogee of a priority claimant does not partake of the priority status given the claimant to which the subrogee is subrogated." *In re Woerner,* 19 B.R. 708, 711–712 (Bkrtcy.D.Kan. 1982). Citing 3 Collier on Bankruptcy ¶ 507.07 at 507–49 (15th ed. 1982).

For these reasons, we hold that Fireman's Fund, as subrogee of the state taxing authority, is not entitled to the government's priority position pursuant to 11 U.S.C. Section 507(d).