**In re TED TRUE, INC., Ted W. True, Debtors.**

**Bankruptcy No. 386–31572 RCM–11.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Sept. 13, 1988.

T. Glover Roberts, Dallas, Tex., Trustee.

Marcy E. Kurtz, Houston, Tex., for HPC.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

The Houston Pipe Line Company ("HPC") claims that involuntary payments it made to the Comptroller of Public Accounts of the State of Texas constitute a priority claim in the debtor's bankruptcy. The Trustee objects on the ground that § 507(d), 11 U.S.C. § 101, et seq., bars HPC's priority status. The Trustee objects to the priority status of HPC's claim, stating that HPC, as a subrogee of the State's tax claim, is not entitled to priority pursuant to § 507(d). HPC contends that it is an assignee of the State's tax claim through an absolute assignment dated August 31, 1987. In addition, HPC alleges that it was not primarily liable for the gas severance tax and acted only as the collecting agent for the State in paying the tax. Thus, as an assignee, § 507(d) did not apply and HPC's claim is entitled to priority status. Both sides filed briefs and a stipulation of facts was entered by the parties.

## FINDINGS OF FACT

The parties stipulated to the facts as follows:

1. Several creditors initiated the Ted W. True bankruptcy case on May 22, 1984, by filing an involuntary petition under Chapter 7 of the Bankruptcy Code. Similarly, several creditors initiated the Ted True, Inc. bankruptcy case on that same day by filing an involuntary petition under Chapter 7 of the Bankruptcy Code.

2. On April 17, 1985, the Court entered an order for relief under an involuntary petition and for conversion in both cases, pursuant to which both cases were converted from Chapter 7 to Chapter 11.

3. On January 29, 1986, the Court signed an order approving appointment of a Trustee of the Estate of Ted True, Inc. On that same date, the Court signed an order approving appointment of a Trustee for the Estate of Ted W. True, Individually.

4. On January 19, 1988, the Court entered an order directing transfer of assets to Dan Lain, as Liquidating Trustee, discharging the duties of the Trustees.

5. The State of Texas, by and through the Comptroller of Public Accounts ("Comptroller"), filed an original priority proof of claim on or about March 14, 1986, in the amount of $956,346.53 for unpaid natural gas severance taxes due to the State of Texas. On or about August 12, 1987, the Comptroller filed a first amend-

ed priority proof of claim for unpaid natural gas severance taxes in the amount of $956,346.53 for the period between May 22, 1980 and May 22, 1984.

6. On April 15, 1987, HPC remitted payment to the Comptroller for unpaid natural gas severance taxes in the amount of $1,040,238.89.

7. On August 31, 1987, the Comptroller assigned all "right, title and interest in and to the priority claim of the Assignor [State of Texas] to the severance taxes in the amount of at least $1,040,238.89 owed to the Assignor by Ted True, Inc.".

8. On September 14, 1987, HPC filed a notice of assignment of the State of Texas' claim.

9. On or about November 17, 1987, the Trustee filed an objection to the prioritization of the claim of HPC, contending that HPC was not entitled to the State of Texas' priority status because HPC's claim arose through subrogation rather than by assignment from the State of Texas.

10. On or about November 24, 1987, the Trustee filed a first amended objection to the claim of HPC, asserting that $18,977.03 of HPC's claim for unpaid severance taxes was unfounded and reasserted their previous allegation concerning the status of HPC's claim.

11. On December 10, 1987, HPC filed a response to the Trustees' first amended objection to claim of HPC, denying Trustee's allegation that HPC acquired its claim through subrogation and denying the Trustees' allegations that the amount of the unpaid severance taxes was other than at least $1,040,238.89.

12. At a confirmation hearing on December 17, 1987, the parties informed the Court that the Trustee's objection to $18,977.03 could be resolved by the parties through negotiation. The parties further informed the Court that a dispute remained as to the priority status of HPC's claim. The Court directed that HPC and the Trustees each file a memorandum of authorities in support of their respective positions as to the priority issue.

13. Ted True, Inc. and Ted W. True, individually, (collectively, "True") and HPC entered into a gas purchase contract (# 1290017101) dated August 3, 1983 (the "Contract"), for the purchase and sale of natural gas in the Brent Ranch Field Area, Moore County, Texas. As seller under the Contract, True was classified as a "producer", as that term is defined in § 201.001(5) of the Texas Tax Code. As buyer under the Contract, HPC was classified as a "first purchaser", as that term is defined in § 201.001(3) of the Texas Tax Code.

14. The transactions giving rise to the claim were conducted on a "gross" method, with HPC paying over to True the funds required to satisfy the payment of the State gas severance taxes. HPC relied, in part, on § 11(a) of the Contract which provided:

Seller [True] agrees to bear and pay all gross production, severance and other taxes now or hereafter required by law to be paid to governmental authorities with respect to the production or the handling of gas at any point upstream from the point of delivery.

15. Between October, 1983 and May 21, 1984, significant amounts of natural gas were sold by True to HPC. During this time period, HPC paid to True the gross amount of production volume, including an amount sufficient to pay severance taxes to the State of Texas. True failed to file the requisite producer reports or pay severance taxes incurred through production as required under the State Production Tax Statute.

16. The parties continued to perform under the Contract after the filing of the involuntary petition commencing this bankruptcy proceeding. Between May 22, 1984 and August, 1985, significant amounts of natural gas were sold by True to HPC. HPC paid True the gross amount of production volume for the natural gas produced over this time period. With the exception of the time period for March, 1985 through July, 1985, True failed to file the requisite producer reports or remit severance taxes due the State.

17. The Comptroller became aware of the delinquent tax obligations arising under the Brent Ranch production and conducted an audit covering the period from July 1, 1982 through June 30, 1986. The audit report, dated March 11, 1987, covered HPC's transactions with True and other parties. The Comptroller's report indicated that the amount of tax for which True was primarily liable, but failed to remit, was at least $1,040,238.89. On March 20, 1987, the Comptroller issued a deficiency determination, requesting that HPC remit unpaid severance taxes to the State.

18. Although HPC remitted payment for the taxes on April 15, 1987, it contested liability and continues to do so.

19. On August 31, 1987, the Comptroller executed an assignment in favor of HPC of the State's priority claim for the severance taxes in the amount of at least $1,040,238.89.

## DISCUSSION

The applicable priority provision of the Code is 11 U.S.C. § 507(d) (1984). The subsection states:

> An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.[1]

The statute speaks to subrogation rather than assignment. Collier alludes to this argument when it states that § 507(d) does not speak to the issue of assigned claims. 3 Collier on Bankruptcy ¶ 507.07, 507–49 to 507–51 (15th ed. 1981). As the Fifth Circuit pointed out in *In re Missionary Baptist Foundation of America*, 667 F.2d 1244 (5th Cir.1982), under pre-Code law both assignees and subrogees, as a general rule, were entitled to the same priority status as that to which their assignors and subrogors would have been entitled. The Reform Act of 1978, however, changed the previous law insofar as subrogees were concerned. *In re Missionary Baptist Foundation of America, supra*, at 1245.

With respect to prepetition taxes which accrued on the property of the debtor, the State taxing authority would be entitled to a priority tax claim pursuant to 11 U.S.C. § 507(a)(7)(B). However, 11 U.S.C. § 507(d) precludes an entity from being subrogated to the State's priority status. Case law follows this rule in denying priority status to a co-debtor, surety, or subrogee of a subrogated tax claim. *In re Woerner*, 19 B.R. 708 (Bankr.D.Kan.1982) (surety who made full payment of debtor's fuel tax obligations to state denied priority); *In re R.O.A.M., Inc.*, 15 B.R. 616 (Bankr.D.Nev.1981) (surety's payment on bond to cover debtor's premiums for employee accident and health claims and state sales and other taxes); *In re Joseph M. Bates*, 30 B.R. 273 (Bankr.D.Md.1983) (purchaser of real property at tax sale did not step into the shoes of the tax assessor's priority); *In re Alva Cooper*, 83 B.R. 544 (Bankr.C.D.Ill.1988) (former spouse who paid federal income tax for which debtor spouse was liable pursuant to divorce judgment was not subrogated to priority of I.R.S.); *In re Nee Company*, 11 B.C.D. 442 (Bankr.D.Md.1983) (represents a bank's priority claim for refunds it made to debtor's credit card customers, who had charged purchases from debtor, but had never received their orders, which was denied because the bank was a subrogee of the customers by virtue that the reimbursement was mandated by federal law pursuant to 15 U.S.C. § 1666(b)); *In re Walsey*, 29 B.R. 328 (Bankr.N.D.Ga.1983) (surety that satisfied debtor's liquor license tax not entitled to priority).

Moreover, officers, principals, or responsible persons of a debtor corporation from whom the I.R.S. collects the one hundred percent penalty covering the prepetition trust fund portion of taxes owed by debtor corporation are not entitled to a priority claim in the debtor's bankruptcy. *In re Tentex Marine, Inc.*, 83 B.R. 530 (Bankr.W.D.Tenn.1988). *In the Matter of Barefoot Sports, Inc.*, 61 B.R. 546 (Bankr. W.D.Wisc.1986). Thus, if an entity is truly

---

1. Section 507(a)(6) was redesignated as § 507(a)(7) by Pub.L.No. 98–353.

an assignee, § 507(d) would not bar assignment of the priority status, whereas, if the entity is characterized as, subrogee, § 507(d) would bar the priority status of its claim.

■ Subrogation is an equitable doctrine based on principles of common law and is not a matter of strict right, but is purely equitable in nature. *Matter of Bugos*, 760 F.2d 731 (7th Cir.1985). The Supreme Court, in *Amer. Surety Co. v. Bethlehem Bank*, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 stated "Among the oldest of these doctrines is the rule of subrogation whereby 'one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other.'" Subrogation is broad enough to include every instance in which one party pays a debt for which another party is responsible so long as the payment was made under compulsion or to protect the party making the payment and in the discharge of some existing liability. *Liberty Mutual Ins. Co. V. Borsari Tank Corp.*, 248 F.2d 277, 288 (2nd Cir.1957). Where a right to subrogation exists, the general rule is an assignment adds nothing to the right; recovery is by virtue of a right in equity, not by virtue of a legal right under an assignment. 73 Am.Jur.2d *Subrogation* § 111, at 670 (1974). The equitable principle of subrogation applies to the satisfaction of debts by a co-debtor prior to bankruptcy, as well as to the post-petition satisfaction of debt. *Matter of Bugos*, at 734; *In re Alloway*, 37 B.R. 420, 423 (Bankr.E.D.Pa.1984); *In re Parker*, 10 B.R. 562, 565 (Bankr.M.D.Ala. 1981).

■ In determining whether HPC's tax payment to the state was compulsory, made to protect its own interest, or in discharging some existing liability, or, on the other hand, whether the payment was completely voluntary, and thus an assignment, the court need look no further than the Texas statute creating the underlying liability for the tax. The pertinent statute is Tex. Tax Code Ann. § 201.251 (Vernon 1982) which reads "The tax imposed by this chapter is the primary liability of the producer and is a liability of the first purchaser and each subsequent purchaser." While the producer is the party primarily liable for the tax, the statute expressly makes the first purchaser and each subsequent purchaser liable for the tax. 56 Tex.Jur.3d *Oil and Gas* § 706 (1987). It is clear that the payments made by HPC to the State, after demanded by the Comptroller, result in subrogation rather than assignment claims, because HPC paid a debt of the debtor corporation, on which it was also liable as a co-debtor and said payments were made under compulsion from the State Comptroller in discharge of the first purchaser's liability. Therefore, the Court concludes that § 507(d) is applicable and controls the case at bar.

HPC argued in its brief that it was merely the collecting agent for the State and, therefore, had no liability on the claim. Furthermore, it disputed any liability owing to the State as a result of an existing contract between the parties whereby the producer agreed to pay the State severance tax. Observing that no reported authorities have interpreted § 201.251, HPC cites cases under the current statute's predecessor, which held that the tax was levied against the producer of gas, and not the purchaser thereof. *W.R. Davis, Inc. v. State*, 180 S.W.2d 429 (1944); *Group No. 1 Oil Corp. v. Sheppard*, 89 S.W.2d 1021 (Tex.Civ.App.—Austin, 1935, writ ref'd n.r. e.). These cases, however, are inapposite because, although the prior statute may not have imposed any liability on the first purchaser to pay the gas severance tax, the present statute clearly makes the first purchaser liable for the tax.

HPC also cites the Supreme Court case of *Barwise v. Sheppard*, 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23 (1936), wherein the court, construing the Texas Oil Severance Tax statute, stated the provisions levied no tax against the purchaser who was merely made the agent of the State to collect from the producer the amount of the tax due. The court further stated that the "Act designates the parties against whom the tax is levied". *Id.* at 37, 57 S.Ct. at 72. The *Barwise* case is readily distinguishable

from the present case inasmuch as the statute was an oil severance tax, not a gas severance tax, and placed liability only on the producer, and statute has long since been repealed. The current statute clearly designates the parties against whom the tax is levied and the first purchaser is one of them.

The existence of the gas purchase contract which, under Paragraph 11(a), contractually obligated the seller, Ted True, Inc. and Ted W. True, individually, to pay the production and severance taxes, did not alter HPC's liability to the State of Texas taxing authority. Creating a contractual obligation between the parties hereto, the contract gave HPC a cause of action against the debtors for breach of contract, and a claim in this bankruptcy proceeding for damages for the breach, but it does not create a right of Plaintiff to be an assignee of the taxing authorities priority status in contravention of federal bankruptcy law.

The Court finds no merit to the argument that the contract, as existed between the parties, whereby the producer was contractually bound to pay the tax, vitiated or exculpated the liability of the first purchaser to pay the tax. The Court finds the words of Justice Van Devanter in *Barwise, supra*, at 40, 57 S.Ct. at 73 telling:

> Plainly no stipulation in the lease can be of any avail as against the power of the State to impose the tax, prescribe who shall be under a duty to the State to pay it, and fix the time and mode of payment. And this is true even though it be assumed to be admissible for the lessors and lessee to stipulate as to who, as between themselves, shall ultimately bear the tax. These views are but a reiteration and application of what repeatedly has been held in respect of contracts and their subordination to the taxing power.

Therefore, the Court finds that HPC is properly characterized as a subrogee and the Court will sustain the Trustee's objection that HPC's claim is not entitled to priority status pursuant to § 507(d).