**In re MID-AMERICAN TRAVEL SERVICE, INC., d/b/a Mid-American Tours, Inc., Debtor.**

**Bankruptcy No. 90-20060M.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

April 20, 1992.

Charles W. Baker, Little Rock, Ark., for debtor.

John D. Bridgforth, Forrest City, Ark., for First Nat. Bank of Eastern Arkansas.

Charles W. Tucker, Little Rock, Ark., Asst. U.S. Trustee.

## ORDER

JAMES G. MIXSON, Bankruptcy Judge.

On May 21, 1990, Mid–American Travel Service, Inc. (Mid–American) filed a voluntary petition for relief under the provisions of chapter 11 of the United States Bankruptcy Code. On June 4, 1991, an order was entered confirming the debtor's liquidation plan.

First National Bank of Eastern Arkansas (FNBEA) filed 163 proofs of claim totalling $104,000.00, and claimed a priority status on $86,000.00 of its claim. On June 28, 1991, the debtor objected to FNBEA's claim of priority.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction to enter a final judgment in the case.

## BACKGROUND

The facts were stipulated by the parties as follows:

1. FNBEA is a national banking corporation with its principal [place] of business being located at 101 North Washington Street, Forrest City, Arkansas.

2. Mid–American Travels [sic] Services, Inc. d/b/a Mid–American Tours, Inc. is an Arkansas corporation which was formerly engaged in the wholesale tour travel business. Mid–American's main office was located in Forrest City, Arkansas. Mid–American did a majority of its banking business with FNBEA.

3. On May 8, 1974, FNBEA entered into an agreement with Norlen, Inc., a Tennessee corporation (a subsidiary of First Tennessee Bank, Memphis, Tennessee) for the issuance of credit cards to FNBEA's customers and receipt of credit card charges to accounts of its customers. A copy of said agreement is attached hereto marked Exhibit "A" and made a part hereof. That said agreement was amended by addendum to agreement dated February 14, 1980. A copy of said addendum to agreement is attached hereto as Exhibit "B" and made a part hereof.

4. That pursuant to the agreement and addendum to agreement, FNBEA issued Bank AmeriCard or VISA cards to individual customers and accepted deposits to its customer accounts on Bank AmeriCard and VISA payments.

5. On January 24, 1984, Mid–American entered into a VISA Member–Merchant Agreement with FNBEA. A copy of said agreement is attached hereto as Exhibit "C" and made a part hereof. This agreement was later amended by Merchant Terminal Agreement between FNBEA and Mid–American dated July 8, 1988. A copy of this agreement is attached hereto as Exhibit "D" and made a part hereof.

6. Mid–American would advertise certain wholesale tours for sale. Individual customers would purchase these tours, some with cash, some with checks, some with credit card charges. Mid–American would deposit the individual purchases into its checking account at FNBEA. For credit card purchases, Mid–American would receive immediate credit in its account at FNBEA. FNBEA would in turn forward the credit card charges with date of deposit to First Tennessee Bank (Norlen, Inc.) which would give FNBEA credit when collected from credit card company.

7. There was a charge to Mid–American for use of the credit card charges. This was based on volume of its account. Mid–American paid between 2.25% and 2.9% of credit charges to its account. Of the 2.25% to 2.9% of the charges, FNBEA received twenty percent (20%) and First Tennessee Bank received eighty percent (80%).

8. For the one (1) year immediately prior to Mid–American filing bankruptcy, FNBEA received credit card deposits to Mid–American's account of approximately $887,720.00. FNBEA received total compensation on said deposits of approximately $3,870.00.

9. Taking into consideration the time and labor involved in sorting and forwarding individual credit card payments deposited at FNBEA to First Tennessee Bank, the Merchant Terminal Agreement between FNBEA and its individual business customers is mainly a service and convenience to said Bank's customers. FNBEA makes little, if any, profit on the credit card business.

10. FNBEA has had total reverse credit card charges against it on Mid–American's account in excess of $104,000.00.

The debtor argues that FNBEA's claim is based on subrogation rights FNBEA acquired when credit card holders "reversed" credit card charges for services the debtor did not perform and, therefore, 11 U.S.C. § 507(d) bars FNBEA's claim of priority. FNB argues that it is an assignee, not a subrogee, of the various credit card holders and, therefore, the provisions of 11 U.S.C. § 507(d) are not applicable.

## DISCUSSION

The issue presented is whether FNBEA's claim should be treated as a priority claim under the provisions of 11 U.S.C. § 507(a)(6) or as a general unsecured claim because of the provisions of 11 U.S.C. § 507(d).

Section 11 U.S.C. § 507(a)(6) provides, in part, as follows:

(a) The following expenses and claims have priority in the following order:

. . . .

(6) Sixth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase ... of services, for the personal, family, or household use of such individuals, that were not ... provided.

Section 11 U.S.C. § 507(d) provides, in part, as follows:

(d) An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection ... (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

Subrogation arises when a party having a liability pays a debt of a party who is liable on a debt and who, in equity, should pay. *In re Bugos*, 760 F.2d 731, 733 (7th Cir.1984), quoting *American Sur. Co. v. Bethlehem Nat'l Bank*, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941). Subrogation entitles the party paying the debt to exercise all rights and remedies that the creditor possessed against the party who should have paid the debt. *Id. Accord In re Russell*, 101 B.R. 62, 64 (Bankr.W.D.Ark.1989).

FNBEA's liability to the credit card holders was pursuant to law. Judge Mannes explained the applicable law for this type of relationship in *In re P.J. Nee Co.*, 36 B.R. 609 (Bankr.D.Md.1983) as follows:

The claim arises by virtue of a Member Agreement ... pursuant to which the P.J. Nee Company was able to process MasterCard System and Visa System credit card charges.

....

[A]s provided under 15 U.S.C. § 1666(b) [the Consumer Credit Protection Act]:

....

(b) ... For the purpose of this section, a "billing error" consists of any of the following:

....

(3) A reflection on a statement of ... services ... not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

....

... 12 CFR § 226.13(e) [provides]:

(e) ... If a creditor determines that a billing error occurred as asserted, it shall within the time limits in paragraph (c)(2) of this section:

(1) Correct the billing error and credit the consumer's account with any disputed amount and related finance or other charges, as applicable[.]

....

Under the Member Agreement between P.J. Nee and [the bank], where a billing error had occurred the parties agreed: "... Bank may charge back any sales draft in connection with a disputed transaction, and member shall pay Bank for such sales draft."

Thus, when the P.J. Nee customers disputed their charges, MNB was compelled to reimburse them and thereafter retrieve these funds immediately from its "member."

36 B.R. at 610–11. The court in *P.J. Nee* held that the bank's claims arose from subrogation, not assignment, and, therefore, 11 U.S.C. § 507(d) barred the bank's claim of priority.

FNBEA argues that it is not a subrogee, but an assignee of the credit card holders and, therefore, the 11 U.S.C. § 507(d) is not applicable. FNBEA advances two arguments as to why it should be held an assignee of the claimants.

First, FNBEA argues that it is an assignee pursuant to the reasoning of the Fifth Circuit in the case of *Wilson v. Brooks Supermarket, Inc. (In re Missionary Baptist Found. of America, Inc.),* 667 F.2d 1244, 1246 (5th Cir.1982). The Fifth Circuit case involved a claimant who voluntarily cashed payroll checks for employees of a debtor without any liability to do so. The court found that the claimant was not a subrogee, but an assignee of the employees and, therefore, 11 U.S.C. § 507(d) did not bar the claim of priority. *Wilson v. Brooks Supermarket, Inc. (In re Missionary Baptist Foundation of America, Inc.),* 667 F.2d 1244 (5th Cir.1982), citing *In re Stultz Bros.,* 226 F. 989 (S.D.N.Y.1915). The facts in the instant case are distinguishable because FNBEA did not act voluntarily when it "reversed" the credit card holders' charges, but was required by law to credit the accounts in the amounts of the disputed claims. Since FNBEA's actions were required by law, its claim arises from subrogation rather than assignment.

Second, FNBEA argues that it is an assignee of the claims because some credit card holders assigned their claims to it by executing a document entitled "statement regarding transfer of claims." However, FNBEA was liable to the various credit card holders by virtue of nonbankruptcy law prior to the execution of these documents. Therefore, there can be no assignment from the credit card holders to FNBEA because there was no consideration to support the purported assignment. *Abraham v. Abraham,* 203 Neb. 384, 279 N.W.2d 85 (1979); 6A C.J.S. *Assignments* § 60 (1975). *See also Turner v. Rust,* 228 Ark. 528, 309 S.W.2d 731, 735 (1958).

## CONCLUSION

The facts in this case are that FNBEA's claims arise solely from principles of equitable subrogation. 11 U.S.C. § 507(d) unambiguously precludes entities asserting a claim acquired under principles of subrogation to the right of the original holder of such claim to priority. *Creditor's Comm. v. Massachusetts Dept. of Revenue,* 105

B.R. 145 (D.Mass.1989); *In re Ted True, Inc.*, 94 B.R. 423, 426–27 (Bankr.N.D.Tex. 1988); *Cooper v. Cooper (In re Cooper)*, 83 B.R. 544 (Bankr.C.D.Ill.1988); *In re P.J. Nee Co.*, 36 B.R. 609 (Bankr.D.Md.1983); *In re Walsey*, 29 B.R. 328 (Bankr.N.D.Ga. 1983); *Woerner v. Farmers Alliance Mut. Ins. Co. (In re Woerner)*, 19 B.R. 708 (Bankr.D.Kan.1982); *R.O.A.M., Inc. v. Aetna Casualty & Sur. Co. (In re R.O.A.M. Inc.)*, 15 B.R. 616 (Bankr.D.Nev.1981); 3 *Collier on Bankruptcy* ¶ 507.07 (15th ed. 1991).

Therefore, for the reasons stated, the debtor-in-possession's objection to FNBEA's claim of priority is sustained.

IT IS SO ORDERED.