**In re A.D.S.T., INC., d/b/a Employment Concepts, Debtor.**

**Bankruptcy No. 93–02549.**

United States Bankruptcy Court, D. Idaho.

May 2, 1994.

Terry L. Myers, Givens, Pursley & Huntley, Boise, ID, for State of Idaho, Dept. of Labor & Indus. Services.

Jed W. Manwaring, Evans, Keane, Boise, ID, for trustee.

Alan J. Coffel, Coffel Law Offices, Nampa, ID, for Z, Inc. dba Paul's Market.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

*Background and Statement of the Issues.*

The State of Idaho, Department of Labor & Industrial Services ("State"), which holds creditor claims assigned to it by certain former employees of the Debtor, has objected to the proof claim of Z, Inc. dba Paul's Market ("Paul's"). The State contends that Paul's claim is not entitled to priority, which status it has asserted pursuant to Bankruptcy Code Section 507(a)(3).

Paul's claim arose when it cashed several payroll checks of employees of the Debtor, A.D.S.T., Inc., an employment agency, shortly before an involuntary petition in bankruptcy was filed against the Debtor. When presented to the Debtor's bank, the checks were dishonored for lack of sufficient funds. Paul's still holds the checks. Paul's claim for priority is based on its argument that it is an assignee of Debtor's employees' claims against Debtor, and as such is accorded the same priority status the employees would possess pursuant to Section 507(a)(3) of the Code. That Section provides as follows:

§ 507. Priorities

(a) The following expenses and claims have priority in the following order:

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000 for each such individual.

11 U.S.C. § 507(a)(3).

The State concedes that the dishonored payroll checks, if held by the former employ-

ees of the Debtor, would qualify as priority wage claims. However, the State argues that Paul's is a subrogee of those claims, and as such that it cannot take advantage of any priority because of the restrictions found in Section 507(d), which provides:

> An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), ... of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

11 U.S.C. § 507(d). Although it appears that a subrogee of a claim does not attain the priority status of the original creditor under Section 507(a)(3) it appears, that Section 507(d) does not prohibit an assignee of a wage claim under Section 507(a)(3) from attaining priority status. As Collier on Bankruptcy notes:

> So long as debts are within the contemplation of the wage claim priority section, those debts will not lose their character by the mere fact that they have been assigned. The character of the debts are fixed when incurred and are not changed by assignment. As a matter of policy it makes sense that the wage earner displaced by the debtor's bankruptcy has the facility to assign his wage priority and receive the value of his claim when it is most needed.
>
> Distinction should be drawn between the assignment of a wage claim and subrogation.... [S]ection [507(d)], authorizing subrogation, denies any priority status to the entity subrogated.

3 L. King, Collier on Bankruptcy ¶ 507.-04[3][h] (15th ed. 1991).

In disposing of this matter, the Court views the issue presented more narrowly than the parties. They focus their arguments on whether Paul's is a subrogee or an assignee for purposes of Section 507. However, Section 507(d) does not require that a party prove it holds an express assignment of a claim in order to obtain priority status. Rather, the law merely mandates that an entity that is subrogated to the rights of the claimant is not allowed a priority. In other words, a claimant need not prove it is an assignee of the employee's claim. It need only show that it holds the claim as something other than a subrogee.

What is a subrogee for purposes of Section 507(d)? Did Paul's, by cashing the payroll checks of Debtor's employees, become a subrogee? These questions are analyzed below.

*What is a "Subrogee" for Purposes of Section 507(d)?*

It might be expected that by utilizing the term "subrogation" in Section 507(d), Congress would have defined the term in the context of the Bankruptcy Code. However, while the same or similar language is used in other provisions of the Code, its usage is not explained.[1]

Section 509(a), which deals with the claims of co-debtors, specifies that "an entity that is liable with the debtor on, or that has secured, a claim of a creditor, and that pays such claim is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. § 509(a). Therefore, co-debtors that pay a debtor's claims are, under this provision, subrogees. Similarly, Section 502(e)(1)(C) disallows any claim for reimbursement or contribution to a co-debtor subrogated under Section 509(a) that asserts the claim paid against the debtor's estate to prevent any possible double recovery.

These sections of the Code specify that certain claims will be considered "subrogated" (i.e. those of the co-debtor required to pay a debtor's obligation to another) and the consequences thereof. They do not suggest that other kinds of claims cannot be considered as arising by subrogation.

The parties have not cited to the Court, nor can it otherwise discern, any clearly articulated federal bankruptcy case law defining the term subrogation upon which this Court may rely. While the cases resolve whether specific claims should be considered "subrogated" or not, and thereby whether

---

1. Curiously, "[t]he floor managers who drafted [the Code in Congress] offered no explanation for the addition of § 507(d), and commentators have been unable to identify any policy reasons that might have prompted the inclusion of this provision." *In re Missionary Baptist Foundation of America,* 667 F.2d 1244, 1245 (5th Cir.1982) (footnotes omitted).

those claims should be entitled to assert a priority status, they do so without enunciation of a reliable standard by which the rights of other claimants may be fixed. *See In re Missionary Baptist Foundation of America,* 667 F.2d 1244 (5th Cir.1982) (store which had cashed payroll checks for debtors' employees was entitled to assert the employees' wage priority); *In re Mid–American Travel Service, Inc.,* 145 B.R. 969 (Bankr. E.D.Ark.1992) (credit card company not afforded priority status after reversing charges against cardholders' accounts when cardholders disputed services allegedly provided by member businesses); *In re Ted True, Inc.,* 94 B.R. 423 (Bankr.N.D.Tex.1988) (creditor not allowed priority status for debt arising from its involuntary payment of debtor's taxes); *In re Allen Carpet Shops, Inc.,* 27 B.R. 354 (Bankr.E.D.N.Y.1983) (bank was not granted priority status for amounts owed on debtor's payroll checking account). As a consequence, this Court is reluctant to use these decisions as a basis for resolving the issues presented here.

■ Absent a federal bankruptcy law definition of subrogation in either the statute or cases, the Court has determined that state law should be consulted for guidance on the subject. This approach is consistent with the notion that a party's status as a creditor in bankruptcy is measured under non-bankruptcy law as of the date of the commencement of the case.[2] Stated another way, unless Congress has indicated a contrary intention in the Code, it is reasonable to assume that state law should control whether a creditor's claim arises by subrogation, or otherwise, in the context of fixing the allowance of that claim in bankruptcy.

In a recent decision, the Idaho courts have discussed the concept of subrogation in a helpful manner:

Subrogation, in its broadest sense, is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities.... One who claims to be equitably subrogated to the rights of a creditor must satisfy certain prerequisites: (1) payment must be made pursuant to an obligation to do so, or in order to protect the subrogee's own interest, i.e., the subrogee must not be making the payment as a mere "volunteer."; (2) the debt paid must be one for which the subrogee was not primarily liable; and (3) the entire debt must be paid. Finally, (4) the subrogation must not work any injustice to the rights of others.

*Hoopes v. Hoopes,* 124 Idaho 518, 521; 861 P.2d 88, 91 (Ct.App.1993) (citations omitted).

For the reasons discussed, the Idaho case law requirements will be employed in this case to determine whether Paul's claim is "subrogated" and therefore subject to the restrictions of Section 507(d) of the Bankruptcy Code.

*Is Paul's Claim Subrogated and Denied Priority?*

■ Applying the above law to these facts, it becomes clear that Paul's claim against the Debtor is not based on subrogation, and therefore it should not be denied priority under Section 507(d). Obviously, Paul's was under no legal obligation to cash the employee's payroll checks, and was acting as a volunteer in doing so. This result is not altered by the fact that Paul's was motivated by the creditor's anticipation that in cashing the checks the employees would also make purchases at its market. Its desire to make a sale does not create any liability to the Debtor. Paul's would not qualify as a subrogee under the Idaho case law.

Paul's argues that in cashing the checks, the employees impliedly assigned their rights of action against Debtor to Paul's. In addition, Idaho law appears to give Paul's its own right of action against Debtor as the holder of the dishonored payroll checks. *See* Idaho Code §§ 28–3–301 and 28–3–507(2). While either of these theories appear plausible, as

---

2. A "creditor" by bankruptcy definition is an entity that holds a claim against the debtor that arose at or before the order for relief. 11 U.S.C. § 101(10). A "claim" is a right to payment or to an equitable remedy as against the debtor. 11 U.S.C. § 101(5). Whether a creditor's claim will be allowed in a bankruptcy case depends upon whether it is enforceable against the debtor or the debtor's property under applicable non-bankruptcy law. 11 U.S.C. § 502(b)(1).

noted above, the Court need not determine the legal basis for the claim, since the objection challenges only its priority status.

*Conclusion.*

The State of Idaho's objection·to Paul's proof of claim will be overruled by separate order. This Memorandum constitutes the Court's findings of fact and conclusions of law. F.R.B.P. 7052.