## IN RE: SHELLS SEAFOOD RESTAURANT, INC.,
### Debtor.

### Case No. 8:08–bk–13440–CPM

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Signed December 22, 2015

---

Daniel R. Fogarty, Don M. Stichter, Stichter, Riedel, Blain & Prosser, P.A, Tampa, FL, for Debtor.

## ORDER AND MEMORANDUM OPINION ON UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO CLAIM NOS. 139–1, 243–1, AND 350–1 OF JM PARTNERS LLC

Catherine McEwen, U.S. Bankruptcy Court Judge

"To be, or not to be, that is the question."[1]  In Shakespeare's most famous soliloquy, Hamlet contemplates his continued existence.  Reframed in the context of priority claims in bankruptcy, Shakespeare could have easily penned these words instead: To be a subrogee or to be an assignee?  In this contested matter, that is the question—because 'tis nobler in terms

of priority to exist as an assignee rather than suffer the status of a subrogee and exist with no priority.  The Court must now determine whether the purchaser of a priority claim is an assignee or a subrogee to resolve the ultimate question of whether the claim purchaser is entitled to the priority accorded to the original claimant's claim.

### Background

The Debtor, Shells Seafood Restaurant, Inc., filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 2, 2008.[2]  The case was then converted to a Chapter 7 case on September 26, 2008.[3]  The deadline to file a proof of claim in the case was January 29, 2009.[4]  Three of the Debtor's employees timely filed proofs of claim for wages earned and asserted such claims as priority wage claims under 11 U.S.C. § 507(a)(4).[5]  In December 2014, JM Partners LLC ("JM") acquired the three claims and thereafter filed a Notice of Transfer/Assignment of Claim for each.[6]  The United States Trustee objects to the claims and argues that JM was subrogated to the rights of the wage claim holders when it acquired the claims and, therefore, is not entitled to the priority status accorded to wage claims because of the restrictions in § 507(d).[7]  In response, JM argues that it is an assignee of the employees' wage claims and, as such, may assert the same priority status the employees would possess under § 507(a)(4).[8]

### Analysis

Bankruptcy Code § 507(a)(4) grants a fourth priority to employee

1.  WILLIAM SHAKESPEARE, THE TRAGEDY OF HAMLET, PRINCE OF DENMARK act 3, sc. 1.

2.  Doc. No. 1.

3.  Doc. No. 60.

4.  Doc. No. 61.

5.  Claim Nos. 139–1, 243–1, 350–1.

6.  Doc. Nos. 577, 578, 579.

7.  Doc. No. 584.

8.  Doc. No. 587.

wages, salaries, or commissions earned within 180 days before the bankruptcy petition filing date.[9] However, § 507(d) limits the rights a claimant can acquire by subrogation, providing that an entity subrogated to the rights of a wage claim holder is not entitled to the priority status accorded to such claims.[10] But an assignee or entity that holds the claim as something other than a subrogee is not subject to the same limitation and is entitled to assert the priority status of the claim.[11] The term "subrogation" as used in § 507(d) is not defined in the Bankruptcy Code. Therefore, in distinguishing between a subrogee and an assignee, courts have focused on whether the creditor was under a legal or contractual obligation to pay the claim.[12] A subrogee acquires a claim under a legal or contractual obligation to the original claim holder to pay the obligation.[13] In contrast, an assignee acquires a claim through a voluntary transaction and under no obligation to the original claim holder.[14]

■ A proper proof of claim is presumed valid and is prima facie evidence of

**9.** 11 U.S.C. § 507(a)(4).

**10.** 11 U.S.C. § 507(d). Under pre-Code law, both subrogees and assignees were entitled to assert the priority status of the original claim holder. *Shropshire, Woodliff & Co. v. Bush,* 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436 (1907). When the Code was enacted in 1978, § 507(d) made a distinction as to subrogees, but the floor managers who drafted the provision offered no explanation for its addition. *Wilson v. Brooks Supermarket, Inc. (In re Missionary Baptist Found. of Am., Inc.),* 667 F.2d 1244, 1245 (5th Cir.1982).

**11.** *In re All Am. Mfg. Corp.,* 185 B.R. 79, 80–81 (Bankr.S.D.Fla.1995) (citing *In re Missionary Baptist,* 667 F.2d at 1246–47).

**12.** 4 *Collier on Bankruptcy* ¶ 507.16 (16th ed.2015); *NOVA Info. Sys., Inc. v. Premier Operations, Ltd. (In re Premier Operations),* 294 B.R. 213, 220–21 (S.D.N.Y.2003).

**13.** *See, e.g., Creditor's Comm. v. Commonwealth,* 105 B.R. 145, 148–49 (D.Mass.1989) (finding that insurance company's claim was subrogated because it was obligated to make payments pursuant to surety bond); *In re Mel–Hart Prods., Inc.,* 156 B.R. 606, 607 (Bankr.E.D.Ark.1993) (finding that company was not an assignee of its employees' wage claims because it was obligated to pay the employees under a contract between the parties); *In re Mid–Am. Travel Serv., Inc.,* 145 B.R. 969, 972 (Bankr.E.D.Ark.1992) (finding that bank was a subrogee of credit card holders when it "reversed" charges against card holders' accounts because it was required by law to credit the accounts in the amounts of the disputed claims); *In re Ted True, Inc.,* 94 B.R. 423, 427–28 (Bankr.N.D.Tex.1988) (finding that company was a subrogee of the state's tax claim because it made the tax payment under compulsion from the state comptroller); *In re P.J. Nee Co.,* 36 B.R. 609 (Bankr.D.Md.1983) (finding that bank was not an assignee of debtor's customers because the bank was legally obligated to reimburse the customers under consumer protection laws).

**14.** *See, e.g., In re Missionary Baptist,* 667 F.2d at 1246–47 (finding that store that voluntarily cashed payroll checks for debtor's employees was an assignee); *In re Aurora Graphics, Inc.,* 255 B.R. 612, 613 (Bankr.D.N.H.2000) (finding that a party who pays wage claims of a debtor when it "is under no legal obligation to do so may receive an assignment of those employees' priority claims against the debtor"); *In re All Am. Mfg. Corp.,* 185 B.R. at 81 (finding that check-cashing agency that cashed payroll checks of debtor's employees was an assignee because it was under no legal or contractual obligation to cash the checks and had no interest in the transactions between the debtor and its employees); *In re A.D.S.T., Inc.,* 169 B.R. 64, 66 (Bankr.D.Idaho 1994) (finding that claimant who voluntarily cashed employee payroll checks of a debtor was not a subrogee because it was under no legal obligation to cash the checks); *In re Paris Indus. Corp.,* 95 B.R. 258, 259 (Bankr. D.Me.1989) (finding that company was an assignee of employee claims for vacation pay because it "was under no legal compulsion to pay the employees").

the validity and amount of the claim.[15] Therefore, the party objecting to the claim bears the burden of overcoming the presumed validity of the claim with equivalent probative evidence.[16] Because this matter was brought to the Court on the United States Trustee's objection to JM's claims, the United States Trustee must allege and proffer facts sufficient to overcome the validity of JM's claims.

Here, the United States Trustee has not met this burden, as no allegation was made nor evidence proffered to support a contention that JM holds the claims as anything other than an assignee. There is no allegation that JM was under a legal or contractual obligation to buy the employees' wage claims or that JM made the payment in the discharge of an existing liability to the employees. The record suggests merely that the payments to the employees were for their benefit in that they were not required to "await the unfolding of the bankruptcy process."[17] A mere agreement between two willing parties to assign a claim from one party to another does not support a contention that JM acquired the claims under a legal obligation to do so or that JM entered into the agreement with the expectation of being subrogated.

*Conclusion*

Based on the record and applicable law discussed above, this Court finds and concludes that JM was under no legal or contractual obligation to purchase the wage claims of the Debtor's employees and, as such, is merely an assignee of such claims. Therefore, as an assignee, JM is entitled to assert the same priority the claims enjoyed in the hands of the employees.[18] Accordingly, it is

**ORDERED** that the Trustee's objection to Claim Nos. 139–1, 243–1, and 350–1 of JM Partners, LLC is overruled.

---

15. Fed. R. Bankr.P. 3001(f).

16. *Bishara v. O'Callaghan (In re O'Callaghan)*, 304 B.R. 500, 505 (Bankr.M.D.Fla. 2003); *see also Walston v. PYOD, LLC (In re Walston)*, 606 Fed.Appx. 543, 547–48 (11th Cir.2015) (stating that the objecting party "cannot overcome the prima facie validity of the claims simply by objecting" and, instead, must support the objection "with evidence to negate a fact set forth in the proof of claim").

17. *In re Paris Indus. Corp.*, 95 B.R. at 259 (citing 3 *Collier on Bankruptcy* ¶ 507.07 (15th ed.1988)).

18. This leaves for the chapter 7 trustee's consideration the income tax, Social Security, and Medicare withholding implications of the assignment, which implications are beyond the scope of the contested matter arising from the United States Trustee's objection to the claims. However, an assignee "stands in the shoes of [its] assignor, receiving only those rights and benefits available to [the assignor]." *United of Florida, Inc. v. Illini Fed. Sav. & Loan Ass'n*, 341 So.2d 793, 794 (Fla. 2d DCA 1977). This suggests that JM should receive what the employees should have expected to receive, which is the amount of their pay net of the required withholding. The chapter 7 trustee would then send the required withholding to the Internal Revenue Service. DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE, PUBLICATION 15 (CIRCULAR E), EMPLOYER'S TAX GUIDE (2015).